## AMERICAN CARAMEL CO. v. THOMAS MILLS & BRO.

(Circuit Court of Appeals, Third Circuit. December 3, 1906.)

No. 36.

**1. PATENTS—INVENTION—TESTS.**

While utility is not necessarily a test of invention, it may help to determine the question, increased efficiency being accepted as an important factor, and it is also regarded as significant that there has been a recognized need of such a machine as that of the patent, and that the efforts of others to meet it have been without success which the patentee has attained only after continued experiment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 39.]

**2. SAME—PRIOR PUBLIC USE.**

A patent is not invalidated because a machine like that of the patent was made and used by the patentee more than two years before the application was filed, where such use was for the purpose of experiment only, nor is such use a public use, which will defeat the patent because the product of the machine during the time was sold.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 103.]

**3. SAME—INVENTION AND INFRINGEMENT—CANDY CUTTING MACHINE.**

The Hershey patent, No. 532,554, for a machine for cutting candy, covers a combination which was new, although the elements were old, and discloses patentable invention; the machine being of greater efficiency than any of the several which preceded it in the art. Also *held* valid as against the claim of prior public use, and infringed.

Appeal from the Circuit Court of the United States for the Eastern District of Pennsylvania.

For opinion below, see 138 Fed. 142.

Henry E. Everding, for appellant.

A. B. Stoughton and Henry P. Brown, for appellee.

Before DALLAS and GRAY, Circuit Judges, and ARCHBALD, District Judge.

ARCHBALD, District Judge. The patent in suit is for a machine to cut caramels and other similar candy products issued to M. S. Hershey January 15, 1895. The bill was dismissed upon the ground that there was nothing patentable in the device; all the elements being old, and there being no invention in putting them together in the way that was done. (C. C.) 138 Fed. 142. The machine consists in a stationary table, suitably supported, having a transverse slot or opening, through which a feed roller projects upwards from below, and over which a blade roller, armed with circular cutting discs or knives, is hung, conformably to the feed roller; the two being so geared and journaled that their meeting surfaces move forward together in the same direction. To carry the material to be cut, a blade or pad is provided, which is drawn with such material, along the table as a rest or guide, between the cutting and the feed rollers, by the frictional action of the same, during the course of which operation the cutting takes place. The table may be level, or may incline from the feed to the delivery end; and the rollers may or may not be vertically adjustable to suit different thicknesses of the candy. The plate or pad is preferably made of some

flexible and yielding material, such as pasteboard, blotting paper, felt, or rubber, into the surface of which the knife edges are arranged to sink or bite, so as not only to insure a clean and complete cut, but to assist in moving the pad forward through the rollers, by frictional contact with the blades. By the projection of the feed roller through the slot in the table, an arching of the pad is also produced at the point of contact with the knives, which adds to the efficiency of the operation.

The claims of the patent are as follows:

"1. The combination, with a slotted table, of a shaft having blades and journaled above said slot, a roller journaled below the slot, said shaft and roller being so geared that their adjacent parts move in the same direction, and a plate or pad adapted to be drawn between said blades and the roller by the frictional action thereof, for the purpose specified.

"2. The combination, with a slotted table, of a shaft having blades and journaled above said slot, a roller journaled below the slot, said shaft and roller being so geared that their adjacent parts move in the same direction and a flexible plate or pad adapted to be drawn between said blades and the roller by the frictional action thereof, for the purpose specified.

"3. The combination, with a slotted table, of a vertically adjustable shaft having blades and journaled above the slot, a roller journaled below the slot, said shaft and roller being so geared that their adjacent parts move in the same direction, and a flexible plate or pad adapted to be drawn between the blades and the roller by the frictional action thereof, substantially as and for the purpose specified."

The only difference in these claims is that in the second and third the pad is flexible, and in the third the cutting shaft is vertically adjustable.

No such combination, as is so specified, is to be found in the prior art, however the different elements of which it is composed may appear there. The Wunderle machine (unpatented), which is the first reference made, is a very old and primitive affair, built in 1874, in which there is nothing but the merest rudiments. It was used for fig paste, and consists simply of an upper shaft, vertically adjustable, with large circular disc-like scoring or cutting blades, and a smaller under roller, the material to be cut being put through between the two, on a board, first in one direction, and then at right angles, so as to divide the paste into squares. The two rollers are independent of each other, and not geared together as in the device in suit; the only function of the lower one being, as a slide, to facilitate the passing through of the board which carries the material. And, as further distinguishing it from the present device, there is no table of any kind, slotted or otherwise, nor is the board flexible, like the plate or pad specified in the second and third claims. This machine, also, after having been used by Wunderle for a couple of years was thrown aside, his competitors, as he says, getting out a better looking and more salable candy than he could by means of it; and it was sold soon afterwards to the defendants, in whose stockroom it has been stored away ever since, unnoted and unused, until resurrected for the purpose of this suit. Whatever virtue, therefore, it may have originally had, as it stands, it must be regarded as in the nature of an abandoned experiment, of which no notice need now be taken.

The so-called "chewing-gum machine"—also unpatented—is a stage in advance of this, but not by any means to the extent of being an

anticipation. It was built by the defendants in 1889 for a factory in North Carolina, and upon the failure of that concern was taken back about a year later. Another was built about the same time for a Baltimore man, and still another for Mr. Hershey, the present inventor. It has the usual upper and lower rollers, which are geared together, the former being vertically adjustable, and being provided with blunt circular scoring blades or edges, with transverse, or cross, edges at intervals. There is no slotted table, however, although it must be confessed that the shelf or rest and the sloping discharge slide, on opposite sides of the lower roller, come pretty near to that. But distinctly there is no pad; the material being its own conveyor, and being fed into the machine on one side and allowed to shoot down the slide on the other. And it is, moreover, essentially a scoring and not a cutting machine; the gum or candy still remaining in a sheet, the cutting edges only going partially through it. Nor is this materially different in the modified form, with knives instead of scoring edges on the upper roller. And whatever its efficiency with chewing gum, as used by Hershey for caramels it was not successful. The only other machine in the immediate candy cutting art which calls for notice is the B. Parker (1883). This was a cutting, and not a mere scoring, machine, as argued; the knives going clear through, although a pasteboard pad was sometimes required to hold the material up to the knives, in order to have them do so. It was the one successful caramel cutting machine prior to that in suit, and was expressly designed for that use. It was extensively employed by Hershey in his factory, and it was in fact by his experiments with it that he came to invent his own machine. Notwithstanding this, however, the two are not at all alike; the only things in common being the upper vertical adjustable cutting roller and the removable pad or board on which the material is placed. There is no under or feed roller, and, instead of a stationary slotted table, there is a traveling carriage, on which the boards are set, and by which the material is carried under the knives. The carriage and the cutting roller are geared together, and both move forward at the same time, but not at the same rate; the cutting edges being given a greater velocity, in order to make a better cut. Certain leather embossing and cutting machines are also referred to, which have some common features, and to a certain extent act in the same general manner as the Hershey, but they deal with a different character of material, which presents different conditions, calling for different treatment, and do not need to be specially considered. The same is true of the Baumgartner noodle cutter (1874), the only significance of which is that it shows an arched flexible strawboard plate or pad, into the surface of which the knife edges cut or bite, making this feature and function old.

From this review of the prior art, it thus appears, as already stated, that there was nothing which directly anticipated the present device. No doubt the instrumentalities made use of by the inventor were at hand, cutting machines being found in various arts, with knives, and rollers, and tables or beds, and flexible pads, similarly, if not suggestively, used. But that does not dispose of the one in hand. The combination which is there found is new; and the only question is whether

it amounted to invention to put together the elements made use of in the way that was done. It is not easy to say in any case what does and what does not constitute patentable invention; and it is a delicate matter to declare that a device, although novel, is devoid of it. Utility is not necessarily the test. McClain v. Ortmayer, 141 U. S. 419, 427, 12 Sup. Ct. 76, 35 L. Ed. 800. Although it may help to determine the question; increased efficiency being accepted as an important factor. Webster Loom Co. v. Higgins, 105 U. S. 580, 26 L. Ed. 1177. So, also, is it regarded as significant that there has been a recognized need for such a machine, and that the efforts of others to meet it have been without success, which the inventor has attained only after continued experiment. Gandy v. Main Belting Co., 143 U. S. 587, 594, 12 Sup. Ct. 598, 36 L. Ed. 272. All these are considerations which are of force here, not in a large way, it may be, but sufficiently. At least three different and distinct attempts, by as many parties, were made, as we have seen, to produce a candy-cutting machine of this character, none of which was altogether satisfactory; one, however, being regarded as of sufficient merit to receive a patent. On account of the imperfect work turned out by the best of them, Hershey set about to see whether he could not get up something which would answer. To this end he conducted extended experiments, with not a little outlay of money, before he got what he thought would do, the result of which was a marked success; the production of the factory being increased from three to five fold, and considerable labor at the same time dispensed with. The machine makes a clean and thorough cut—the essential thing—and operates with such accuracy that a definite number of caramels are able to be taken without being weighed to make up pound and half-pound packages, materially saving in the work of handling and packing them. There are also other advantages, operative and functional, some of which have been alluded to above, on which it is not necessary to dwell. Taking all things into consideration, a case would seem to be presented in which the exercise of inventive faculty was shown. The mechanism, of course, is not intricate, and a high order of invention may not be involved. It also, no doubt, follows the same general lines already marked out by others, in this and other arts, from which, indeed, there is little opportunity to depart. But, unless the possibility of there ever being anything patentable in candy cutting machines is to be denied, it would seem to be found here. Not only is there a judicious selection by the inventor of the mechanism employed, but there is a discriminating adaptation of it to the work to be performed, which suggests something more than the mere skill of the ordinary mechanic, and partakes rather of the inventive insight and discovery which it is the design of the patent law to foster and protect. A presumption exists in favor of the device by reason of the patent granted to it. But without resting the case upon that we are of the opinion that actual inventive merit is shown sufficient to meet the requirements of the law, and that it should have been so held in the court below.

It is urged, however, that the patent is invalid, because the machine was in public use for over two years before the patent was applied for.

Not only is this not negatived, as it is said, by the usual affidavit required of inventors—that executed by Hershey being made August 24, 1892, nearly nine months before the application, leaving a gap which is thus uncovered—but is conceded, also, by Hershey in his testimony, the machine having been used, as he says, in his factory since the spring of 1891, to which he admits that he did not know there was any objection. But in whatever uncertainty the subject may seem to be left by that which is so referred to, it is put at rest by the other evidence. The first two machines which were designed for commercial use were built by Blickenderfer by contract, and were not completed until October 31, 1891; the patent being applied for May 3, 1893, a year and a half later. This is established beyond controversy by the charges in Blickenderfer's books, and is confirmed by his testimony, as well as by that of Blair, Robinson, and Brooks, all of whom agree. There was no doubt an earlier machine, more or less complete, which was being experimented with, from along in March up to the latter part of August, 1891, when it was found to work satisfactorily, and it is to this that Hershey evidently refers. But the use made of it was purely experimental, and does not count. Nor is this affected by the fact that caramels cut on it were sold. Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000; Bryce v. Seneca Glass Co. (C. C.) 140 Fed. 161. It is denied that there were any such sales. But, assuming that there were, the caramels did not have to be thrown away to escape the charge of a public use.

The patent being valid, infringement is clear. The defendants manufacture two kinds of machines, the one for hand and the other for steam power. In the hand power machine the duplication beyond question is complete, and so also, in our judgment, is it in the steam power, the exact combination claimed in the patent appearing in both. A distinction is sought to be made in the latter that the cutting blades and the feed roller, instead of being one larger than the other, as in the Hershey machine, are both of the same size, and are so geared together that the feed roller runs faster, dominating the motion of the material, the other being confined to the single function of cutting, where in the Hershey it is arranged to assist in feeding also. This, as it is claimed, is a material difference; Hershey having gained his patent on the assertion of the frictional contact of blades and pad, by which the latter is positively moved. No doubt this functional advantage was claimed in argument in the Patent Office, and not a little made of it there. And it was also put into the specifications, where it now appears, before the patent was allowed. But at the most it is merely descriptive of the supposed action of the machine, and not a limitation upon it, to which the inventor committed himself; there being no amendment or restatement of the claims by which the invention was defined. It is the mechanical combination there specified which is patented, and not the particular functions or advantages claimed for the different parts; and infringement is not escaped where there is a substantial appropriation of the mechanical construction, even though, by slight variations, unimportant changes in the mode of operation may be made.

The decree is reversed, with directions to reinstate the bill and grant the relief prayed for.