AMERICAN CARAMEL CO. v. WHITE.

(Circuit Court of Appeals, Seventh Circuit.   October 5, 1915.   On Petition for Modification of Decree, June 7, 1916.)

No. 2068.

1. PATENTS ☞240—INFRINGEMENTS—IMPROVEMENTS.
    The manufacture of a patented article under an improvement patent constitutes an infringement.
    [Ed. Note.—For other cases, see Patents, Cent. Dig. § 379; Dec. Dig. ☞240.]

2. PATENTS ☞328—VALIDITY—INFRINGEMENT—ANTICIPATION.
    Patent No. 532,554, for a candy cutting machine, *held* valid showing an invention which was not anticipated and to be infringed by defendant's machine for cutting candies.

On Petition for Modification of Decree.

3. PATENTS ☞222—INFRINGEMENT—DAMAGES.
    When a patentee has failed to properly mark the goods which he has offered for sale so as to show the patent, no damages for infringement

can be recovered without proof that defendant was notified of the infringement and continued thereafter to make, use, or vend the patented articles.

[Ed. Note.—For other cases, see Patents, Cent. Dig. § 352; Dec. Dig. ☞222.]

4. PATENTS ☞312(1)—INFRINGEMENT SUITS—BURDEN OF PROOF.

Where defendant denied the averments of the bill that he was notified of the existence of complainant's patent, complainant has the burden of proving such notification.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 544, 545; Dec. Dig. ☞312(1).]

5. PATENTS ☞314—INFRINGEMENT SUITS—STIPULATIONS.

A bill for infringement averred that complainant's machines were duly marked patented, that complainant had caused notice to be given to defendant of his infringement, and requested defendant to desist, and that defendant had disregarded such notice, well knowing the rights of complainant were being infringed. The answer specifically denied the markings and disregarding of the notice, and generally denied the averments of the bill. The parties stipulated that subsequent to the grant of letters patent, and prior to the institution of suit, complainant gave defendant notice of infringement, and requested defendant to cease. The only proof of an infringing sale was a stipulation that witnesses would testify that prior to the filing of the bill they had purchased from defendant machines like those illustrated in drawings, which machines it was adjudged infringed. Held, that, as plaintiff might have relied on the stipulations as establishing defendant's infringement after notice of the patent, complainant was entitled, notwithstanding the absence of proof, either that complainant's machines were marked patented, or that defendant infringed after notice of complainant's patent to an opportunity to supply such proof which is essential to recovery of damages.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 550–553; Dec. Dig. ☞314.]

6. PATENTS ☞325—INFRINGEMENT SUITS—RIGHT TO COSTS.

In a suit for infringement of a patent, where complainant was entitled to an injunction at the time of the filing of the bill, and such relief was denied only because of the expiration of the patent pendente lite, complainant is entitled to costs regardless of its right to recover damages for the infringement.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 607–612; Dec. Dig. ☞325.]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit by the American Caramel Company against Jacob White. From a decree for defendant, complainant appeals. Reversed and remanded with directions.

John M. Coit, of Washington, D. C., for appellant.

Charles C. Linthicum and Walter M. Fuller, both of Chicago, Ill., for appellee.

Before BAKER, SEAMAN, and MACK, Circuit Judges.

MACK, Circuit Judge. This is an appeal from a decree dismissing, on the ground that the claims are invalid in view of the prior art, a bill for an injunction and accounting based on the alleged infringement of letters patent No. 532,554, for a candy cutting machine, granted to Milton S. Hershey. In American Caramel Co. v. Mills,

149 Fed. 743, 79 C. C. A. 449 (C. C. A., 3d Circuit), a similar decree of the Circuit Court (138 Fed. 142) was reversed. The patent has expired since the commencement of the suit.

[1, 2] The first claim of the patent in suit is as follows:

"1. The combination, with a slotted table, of a shaft having blades and journaled above said slot, a rolled journaled below the slot, said shaft and roller being so geared that their adjacent parts move in the same direction, and a plate or pad adapted to be drawn between said blades and the roller by the frictional action thereof, for the purpose specified."

The other claims differ from the first only in describing the plate or pad as "flexible" in the second and third claims and the shaft as "vertically adjustable" in the third claim.

In the application, the invention is described as "an improvement in that class of devices used for cutting candy, caramels and similar products," its object, "to subdivide sheets of the product into parts suitable for use," and its particular advantage and superiority, the reduction in the amount and therefore the cost, of machinery by reason of utilizing the device in a twofold manner, in that the—

"successful application of the device through which is applied the frictional force required to move the pad carrying the material to be cut also necessitates the cutting of that material."

We shall consider in their order the defenses of anticipation, lack of invention, and noninfringement.

1. While there is no contention of novelty in the elements, the combination concededly is not exactly anticipated. The nearest device is said by appellee's witnesses to be the noodle-making machine of the Baumgartner patent, No. 146,304. As described and claimed, this is a small hand-driven machine to roll dough and to cut it into noodles. We are not here concerned with the additional mechanism for rolling the dough. As a dough-cutting machine, it has some of the elements used by Hershey, but it lacks the table, either with or without slot, and necessarily so, if the underlying roller is to co-operate with another roller under it for and during the rolling process, and with the overlying knives for and during the cutting operation. In Hershey's device, the table serves to support the pad on which the material to be cut has been placed, not only during but also before and after the cutting, and also to guide it between the knives and the underlying roll. Concededly in Baumgartner, the narrow adjustable rollers, located some distance in front of and behind the knives, cannot offer any support or guidance to the pad either before it is engaged by the knives or after it has completely passed over the underlying roll; manual support and guidance is essential in feeding the pad with the contents to the cutters and in receiving it therefrom. These rollers are therefore no mechanical equivalent for the Hershey table. We have referred to the Baumgartner patent, not only because it is the device mechanically nearest to Hershey's, but also because, though dealt with in the Court of Appeals, it was not introduced in evidence or considered by the expert witnesses in the Mills Case.

2. Little is to be added to the reasons given by Judge Archbald in the Mills Case, in which we fully concur, for upholding Hershey's

contention that inventive genius, even if not of a high order, and not merely mechanical skill was involved in producing his device. The Parker machine patent, 270,468, as pointed out in the Mills Case, is of an entirely different construction and mode of operation. Though extensively used by Hershey in his factory, it did not fully meet the needs of the candy trade. Others had tried to solve the problem of getting a clean-cut caramel by mechanical means; Hershey succeeded, combining the slotted table with its underlying roller disclosed by Duff in patent 115,039, granted a quarter of a century earlier for a confectioner's paste breaking and rolling machine, with the still older cutting knives, and causing both to co-operate with the roller in the manner and with the results attained by Hershey was not so obvious as to have suggested itself either to Duff, who knew that the rolled lozenge paste, referred to in his patent, must be cut, or to any of his successors. In our judgment, Hershey first conceived the possibility of a better result from a new relationship of old elements, and then found the elements in this and kindred arts that would answer his requirements. Railroad Supply Co. v. Hart Steel Co., 222 Fed. 261, 273, 138 C. C. A. 23.

3. Infringement is not seriously controverted. The machines manufactured by defendant practically, though with some variations, in accordance with the Woolf patent, 651,789, or the Ellis patent, 918,427, while not exact copies of the Hershey device, either duplicate or offer a mechanical equivalent for the elements of his combination, functioning in the same manner.

In the Woolf machines, the slotted table is replaced by a table made up of several sections. The roller underlying the knives projects up between two of the table sections. These sections, thus divided, serve the identical function of Hershey's slotted table. That the Woolf machine has, in addition, a belt whereby the pad is automatically fed along the table to the knives, instead of being manually pushed until engaged by the knives and roller, in no wise saves the machine from the charge of infringement, even though it may support the Woolf patent as for an improvement. Frictional action by the blades and rollers on the pad by which it is drawn and moved on between them is none the less exerted in the Woolf device because the action of the roller on the pad is indirect through the belt that lies between them. Direct contact of pad and roller is not requisite under the Hershey claims. A claim rejected in the Patent Office described the pad merely as "adapted to be moved between the blades and roller." The limitation in the substituted claims and Hershey's accompanying statement that "the main difference is that the present claims specifically confine the force by which the pad is moved to the friction exerted thereon by the blades and the rollers between which it is drawn," read in the light of the rejected claims, lays the stress on the word "friction." It in no way, however, limits the frictional action to that produced by direct contact of the roller and pad.

While the blade shaft of the Ellis and Woolf devices is not vertically adjustable, the same functional purpose is served by making the under-

lying roller vertically adjustable. In this respect, too, there is mechanical equivalency.

Defendant's machines were adapted to and used for cutting caramels. To do this, the paste must be cut through. Assuming, as defendant contends, that Hershey's claims are limited by the Patent Office proceedings to a machine in which "the pressure of the blades necessary to produce sufficient friction to move the pad must be such as to entirely cut through the material carried by it," infringement is not escaped by an adjustability which, while it allows, may also prevent, a full cut and direct contact of the blades with the pad.

While the evidence of defendant's manufacture and sale of infringing machines is confined to a stipulation that two machines like those illustrated in certain drawings were sold by him before the bill was filed, and while these drawings do not show the pad, an element in each of the Hershey claims, it is apparent from the whole evidence that the machines were designed to be used, and that at least one of them was, in fact, used with a flexible pad. Whether defendant by his manufacture and sale infringed, or only contributed to the infringement, is immaterial. In either event, complainant was entitled to the relief prayed for, and, since the expiration of the patent pendente lite, is entitled to an accounting of profits and to damages.

The decree must be reversed, and the cause remanded for further proceedings in accordance with the views herein expressed.

Note.—Judge SEAMAN concurred in reversing the decree, but did not read the opinion.

### On Petition for Modification of Decree.

MACK, Circuit Judge. The bill of complaint in this case charged that the patented machines had gone into extensive public use, and were all duly marked patented together, with the date of the letters patent. It further charged that the complainant had caused notice to be given to the defendant of his infringement of the complainant's rights; had requested the defendant to desist and refrain therefrom; and that the defendant had disregarded such notice. The only other allegation tending to charge the defendant either with knowledge or notice of the complainant's rights or of his infringement thereof is the general allegation that "the defendant, well knowing the premises and the rights accruing to your orator aforesaid," infringed. The answer specifically denied the marking and the disregarding of any notice. If the general allegation of knowledge of complainant's rights can be deemed to charge actual knowledge of the patents and the infringement thereof, that charge must be deemed to be denied by the general denial of each allegation in the bill not specifically answered or admitted.

No proof was offered to sustain the allegation of marking. The only proof of knowledge or of any notice to the defendant was the stipulation of the parties—

"that subsequent to the grant of letters patent and prior to the institution of this suit, the complainant gave written notice to the defendant that he was infringing the said patent, and requested the defendant to cease such infringement."

The only proof of an infringing sale was the stipulation of the parties that certain witnesses would testify, if called, that prior to the filing of the bill of complaint, they had purchased from the defendant machines like those illustrated in certain drawings and held by us in the opinion heretofore filed to be infringements.

No proof was offered of the date either of the sale or of the notice, and therefore there is no proof as to whether or not the infringing sales preceded or followed the giving of the notice.

[3] There can however, be no recovery of damages or profits when a patentee has failed properly to mark the goods that he has offered for sale—

"except on proof that the defendant was duly notified of the infringement and continued after such notice to make, use or vend the article so patented."

[4, 5] Because of defendant's denial, the burden was on the plaintiff to prove an infringement after the notice. Dunlap v. Schofield, 152 U. S. 244, 14 Sup. Ct. 576, 38 L. Ed. 426. No such proof was offered. In view, however, of the fact that the plaintiff relied upon stipulations, and that it may have rested under the belief that the stipulations, though silent as to the dates, were intended fully to supply the proof required of it, we are of the opinion that justice requires that an opportunity be given to the complainant to supply evidence of the date of the notice, and if it can, evidence that defendant in fact infringed after the receipt of the notice. If such proof be made the accounting of profits and damages will proceed.

Such accounting however, must be limited to acts of infringement committed after the notice. A patentee may fully protect himself against infringements by properly marking his own goods. If he fail so to do, the statute specifically provides that he shall recover no damages except only in the one event that the infringer be duly notified of the infringement and thereafter continue in his wrongdoing. To permit a patentee to disregard the specific duty imposed upon him by the statute of properly marking the patented articles and to continue for years in the violation of his duty and then to award him profits and damages for a period of six years preceding suit because one, who perchance may have been ignorant of his infringement, continues to infringe even in a single instance after the notice, would be, in our judgment, a complete perversion both of the letter and the spirit of the statute. It would enable a patentee, who has utterly disregarded his statutory duty, to recover the most highly punitive damages. The very purpose of the statute is to bar a patentee from recovering damages for acts done during the period when the patentee himself is violating his obligation toward the public. While no case has come to our attention in which the right of the patentee to damages for infringements committed before, as well as after, notice is discussed, it has been assumed in numerous cases that the recovery is limited to infringements after notice and, in the absence of other notice, after suit.

[6] If no proof of infringement after the notice is offered, an accounting will be unnecessary, and in that event the District Court will

dismiss the bill of complaint. Inasmuch however, as the right to injunction at the time of filing the bill has been sustained, and this relief has been denied only because of the expiration of the patent, pendente lite, the costs will, in any event, be awarded to complainant.

The decree will be reversed; with directions to proceed in accordance with the views expressed herein and in the former opinion of this court.