### ALVEY–FERGUSON CO. v. PETER SCHOENHOFEN BREWING CO.

(District Court, N. D. Illinois, E. D. November 6, 1917.)

#### No. 28988.

1. PATENTS ⬤⟳314—PATENTABILITY—SEPARATE DETERMINATION.

In a suit for the infringement of two patents which work together in a system in a beneficial way, the validity of each must be determined separately on its own merits, claims, and description compared with what· went before in the same field.

2. PATENTS ⬤⟳34, 45—PATENTABILITY—EVIDENCE OF INVENTION.

In doubtful cases, the success of a device or process, either alone or as a part of a system, or the fact that a separate related art has been stimulated by the use of the invention, may be considered in determining novelty or patentability.

3. PATENTS ⬤⟳328—PATENTABILITY—INVENTION.

The Alvey patent, No. 790,766, for a conveyer or device for lowering goods, does not accomplish a new or improved result or an old result from an improved operation, and contains no invention, notwithstanding its use· as part of·a successful system.

4. PATENTS ⬤⟳328—PATENTABILITY—INFRINGEMENT.

The Alvey patent, No. 790,811, for an elevator device for raising goods, *held* valid and infringed as to the five claims in suit.

---

⬤⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Equity. Suit for infringement by the Alvey-Ferguson Company against the Peter Schoenhofen Brewing Company. Decree dismissing the bill as to patent No. 790,766 and for an injunction and accounting as to patent No. 790,811.

John W. Hill, of Chicago, Ill., and C. J. Stockman, of Washington, D. C., for plaintiff.
Brown, Nissen & Sprinkle, of Chicago, Ill., for defendant.

SANBORN, District Judge. Infringement suit on patents 790,776 and 790,811, issued May 23, 1905, to Benjamin H. Alvey, and assigned to plaintiff, covering conveying mechanism for carrying merchandise between different floors or parts of a building or manufactory.

Plaintiff claims that:

The patentee "was the first to conceive of a complete system adapted to handle goods of fragile and delicate nature, as well as otherwise, throughout a complete cycle of their movement; that is, to take the goods at a given point, or at the elevator, as the case may be, elevate those goods to the desired point, handle and transfer them from one point to another in a large factory, involving many stories in one of the giant factories of the time, move them from floor to floor, and from one point to another, and finally deliver them at any point desired with absolute reliability and safety, and this without the necessity of an operator interfering throughout their course."

The first or conveyer patent relates to a device for lowering goods and the other for raising them, known as the elevator device. The claims of both patents which are in the suit follow:

No. 790,776. "7. The herein-described means for conveying articles from one room to the lower portion of the room below the same, comprising a spiral way which has its upper terminal in the lower room and a supplemental conveyer or slide for discharging articles upon the upper portion of said spiral way, said supplemental conveyer or slide extending off from the upper portion of said spiral way at an inclination upward therefrom, through an opening which is located at one side of said way and in the floor of the room above that containing said way, whereby the necessity of an opening in the floor for said spiral way is avoided.

"8. The herein-described means for conveying articles from one room to the lower portion of the room below the same, comprising a spiral way which has its upper terminal in the lower room and a detachable supplemental conveyer or slide for discharging articles upon the upper portion of said spiral way, said supplemental conveyer or slide extending off from the upper portion of said spiral way at an inclination upward therefrom, through an opening which is located at one side of the said way and in the floor of the room above that containing said way, whereby the necessity of an opening in the floor for said spiral way is avoided."

No. 790,811. "1. An elevator comprising a frame having approximately horizontal end portions and its intermediate part arranged at an inclination with its said end portions and gradually merging into the same, rollers constituting a portion of the track or way, a stationary portion arranged at the junction of an end and intermediate portion of the frame, and traveling means for conducting the articles upward along said track or way.

"2. An elevator comprising a frame having approximately horizontal end portions and its intermediate part arranged at an inclination with its said end portion and gradually merging into the same, rollers constituting a portion of the track or way, a stationary portion arranged at the junction of an end and intermediate portion of the frame, means for conducting the articles upward along said track or way, and conveying means for conducting said articles to and from said elevator.

"3. An elevator comprising a frame having approximately horizontal end portions and its intermediate part arranged at an angle with its said end portions and gradually merging into the same, a frame arranged at the junction of an end portion and said intermediate part and forming part of the track or way, rollers arranged to form a part of said track or way, a pair of connected endless belts for conducting the articles along said track or way, and means for holding said belts down adjacent to the junction of said end intermediate portions."

"10. An elevator comprising a frame having a track or way provided with rollers, upon which rollers travel the articles being conveyed, and a traveling conveying means having roller-flights which are arranged above the first-mentioned rollers and engage the sides of said articles and push the same along said track or way.

"11. An elevator comprising a frame, composed of side members and a track or way between said side members, said track or way having rollers upon which travel the articles being conveyed, and a traveling conveying means, comprising endless belts guided by said side members and independently-rotable flights or carriers connecting said belts with each other and traveling above said rollers and engaging the sides of the articles conveyed."

[1, 2] Though much was said at the argument about the Alvey system, in which the structures of the two patents work together in a highly beneficial way, it is evident that the question of the validity of each must be separately judged. Of course each patent must stand or fall on its own merits, on its own claims and description compared with what went before in the same field. It is true that in doubtful cases the success of the device or process, either alone or as a part of a system, or the fact that a separate related art has been stimulated by the use of the invention, may properly be considered in reaching a conclusion on the subject of novelty, or patentability, and will sometimes turn the scale in its favor. Thus, in considering the first patent on the spiral chute and supplemental conveyer, the fact that it is used as part of a successful system of carrying raw material to the upper floors of a manufactory, changing it into the finished product and then returning it in the new form to the ground floor safely and cheaply, should properly be considered in deciding on patent validity, if that question is a doubtful one.

[3] The most that can be said for the first patent is that the joint use of the spiral chute and conveyer does away with the necessity of a hole in the floor over the chute, thus saving floor space and lessening the danger from possible fire. But since both spiral and conveyer were old, the question is whether there is a new or improved result, or an old result from an improved operation. Like the baseburning stove in Hailes v. Van Wormer, 20 Wall. 353, 22 L. Ed. 241, do not the separate elements of the combination work just as they did before? It is true they co-operate, but apparently not in a new way, and with only such better result as is due to proper slope, adjustment, and the use of rollers in the spiral way. The baseburner was tremendously popular, and still is. It secured a vastly improved result, but that was due to aggregation only, as the court decided. Like observation may be made on the rubber-tip pencil, very useful, but a clear aggregation.

I am satisfied that the first patent contained no invention, notwithstanding its use as part of a successful system.

[4] The elevator patent, on the other hand, should be sustained and

held infringed, as to the five claims in suit. The patent structure has proved very successful, and is practically copied by defendant. Apart from these facts I think the combination of elements shown is patentable. A greatly improved result is secured, and there is a better mode of operation than in any of the numerous patents of the prior art. Pieper v. S. S. White Dental Co., 228 Fed. 30, 142 C. C. A. 486; American Caramel Co. v. White, 234 Fed. 328, 148 C. C. A. 230, both in this circuit.

There should be a decree dismissing the bill as to patent 790,776, and for injunction and accounting as to 790,811, without costs for or against either party.