FLAT SLAB PATENTS CO. v. TURNER. *

TURNER v. FLAT SLAB PATENTS CO.

(Circuit Court of Appeals, Eighth Circuit. November 18, 1922.)

Nos. 5142, 5143.

1. Evidence ⊗20(1)—Judicial notice taken that patented flooring could not be marked or tagged, so as to give notice to public.

Where the claim and specifications of a patent for reinforced concrete flooring relate to a particular placement and arrangement of strips of metallic network, permanently concealed from view the moment the cement is poured, the court can judicially notice without averment that marking or tagging with notice of the patent, pursuant to Rev. St. § 4900 (Comp. St. § 9446), is practically impossible, so far as notice to the public is concerned.

2. Patents ⊗312(1)—Assumed that patented flooring was not marked to give notice of patent.

In the absence of averments that reinforced concrete floorings constructed under a patent were marked or tagged with notice of the patent, pursuant to Rev. St. § 4900 (Comp. St. § 9446), and in view of the nature of the invention it will be assumed that there was no marking.

3. Patents ⊗310(7)—Answer held to admit notice of infringement as of certain date, but to put in issue earlier notice.

Where bill in patent infringement suit alleged notice to defendant of the infringement without alleging any date, an answer admitting that complainant sent notices to defendant's customers and prospective customers in reference to a pretended infringement, which notices in September, 1911, were brought to defendant's attention, admitted notice of the infringement as early as September, 1911, but sufficiently put in issue the giving of notice earlier than that date, especially where plaintiff did

---

⊗For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

285 F.—17        *Rehearing denied February 16, 1923.

not rely on the alleged insufficiency of the pleadings to present any issue of notice, but offered proof that notice was given August 23, 1911.

**4. Patents ☜312(1)—Burden on plaintiff to plead and prove notice to defendant of infringement.**

Under Rev. St. § 4900 (Comp. St. § 9446), requiring patented articles to be marked as such, and providing that no damages shall be recovered by the party failing so to mark, except on proof that defendant was duly notified of the infringement and continued thereafter to make, use, or vend the patented article, the burden is on plaintiff to plead and prove the giving of notice in order to recover damages.

**5. Patents ☜324(6)—After direction of interlocutory decree in infringement suit, trial judge held authorized to permit amendments not affecting fact of infringement.**

Where the Circuit Court of Appeals in a patent infringement suit found the patent infringed and directed entry of an interlocutory decree, the trial judge, before whom the case thereafter came after an accounting before a master, might allow the parties to amend their pleadings in any substantial manner not affecting the fact of infringement, especially if done to conform to the proofs, as accounting questions did not arise on the first appeal, particularly as it was an appeal from a judgment for defendant.

**6. Patents ☜222—Profits as measure of "damages" precluded by failure to mark patented article or give notice of infringement.**

Rev. St. § 4900 (Comp. St. § 9446), requiring patented articles to be marked as such, and providing that the party failing so to mark shall not recover damages for infringement, except on proof that defendant was notified of the infringement, and continued the infringement thereafter, uses "damages" in its general sense, and includes profits as a measure of damages.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Damage—Damages.]

**7. Patents ☜316—Compensation for past infringement and prevention of future infringement afforded by infringement suit.**

In a patent infringement case, two kinds of relief may be afforded, prevention of future infringement and compensation for past infringement.

**8. Patents ☜322—No issue on accounting other than to aid in determining amount due.**

The sole purpose and function of an accounting in a patent infringement case is to ascertain the amount due, and no issue can be brought into the accounting which has any object or effect other than to aid in determining such amount.

**9. Patents ☜322—On accounting, question is whether construction different from that shown on infringement trial is within what the decree declares an infringement.**

Where, on accounting in patent infringement suit, it appears that defendant has used a construction differing from the precise one covered by the evidence on the infringement trial, the question is not whether the new construction is an infringement, but whether it is within what the decree has declared to constitute an infringement, and is a question of comparison between the new construction and the one declared to infringe.

**10. Patents ☜322—Evidence of prior art not admissible, when offered for the first time on accounting.**

Evidence of the prior art cannot be introduced for the first time on accounting in patent infringement suit, to show that construction differing from the precise one covered by the evidence on the infringement trial does not infringe, as no aid in understanding the action of the court in passing on the question of infringement can be found in facts not before the court as evidence and not judicially noticeable.

11. Patents ⚖️326(2)—New method of construction by defendant held not within decree declaring patent infringed.

Where a patent for reinforced concrete flooring was upheld only as confined to one in which strips of reinforced metal were laid lengthwise, crosswise, and diagonally over the tops of and supported by columns, so that a strip in each direction would lie on or under each other over the top of each post in cobhouse fashion, leaving only small triangular spaces between the posts free from metallic network, and the construction held to infringe employed such direct and diagonal strips in substantially the same manner, a new construction using similar column supports and similar direct belts of rods, but in which the diagonal belts did not pass over the column supports, but transversely across the direct belts with a network of rods superimposed thereon, held not substantially the same as that decreed to infringe.

12. Patents ⚖️26(2)—Rearrangement of rods in concrete floor must accomplish new result or old result in new manner.

Every change in the number, size, or arrangement of rods placed in concrete flooring to provide tension cannot be dignified as invention, and the change must accomplish a new result or an old result in a new manner.

13. Patents ⚖️318(4, 6)—Method of apportioning expenses and profits between infringing and noninfringing business approved.

Where the business of an infringer consisted of infringing and noninfringing business, expenses and profits, which could, with reasonable certainty, be determined to belong to one or the other class of business, were properly set off against such class, and such expenses as were so intermingled as to be insusceptible of definite separation were properly apportioned in proportion to the ratio of the gross infringing and the gross noninfringing business to the entire gross business.

14. Patents ⚖️318(6)—Compensation of branch office manager held properly apportioned on basis of percentage of infringing business done through branch office.

Where 50.83 per cent. of an infringer's business was infringing business, but 95.33 per cent. of the business done through a particular branch office was infringing, the compensation of the branch office manager, consisting of commissions on the business done by such branch was properly apportioned between the infringing and noninfringing business on the basis of the percentage applicable to such branch office.

15. Patents ⚖️318(6)—Advertising expenses held not to be charged entirely against infringing business, nor apportioned in proportion to aggregate infringing and noninfringing business.

Where 50.83 per cent. of an infringer's business was infringing, and its advertising dealt principally with the infringing construction and featured it, but, nevertheless, also helped the noninfringing business, it would be inequitable on the one hand to charge the entire advertising expense against the infringing business, or, on the other hand, to charge only 50.83 per cent. thereof, and such greater percentage as appears fair should be adopted.

16. Patents ⚖️322—Court held authorized to re-refer question to master.

In a patent infringement suit the court had the right to re-refer to the master the question of apportionment of expenses of a Canadian office, handling some American business, between the Canadian and American business.

17. Patents ⚖️318(6)—Expenses held properly apportioned between infringing and noninfringing business in proportion to relative volume in money.

In suit for infringement of patent for reinforced concrete flooring, the general expenses of the infringer's business held to be apportioned between its infringing and noninfringing business in proportion to the relative volume, in money, of each character of business, rather than on the basis of areas or flooring footage.

⚖️For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**18. Patents ⚷⟹318(6)—Item of expense of which there is no evidence will be excluded.**

In a patent infringement suit, where there was no evidence on which an item of expense could rest, other than an improper theory of division between infringing and noninfringing business, the item will be excluded.

**19. Patents ⚷⟹318(4)—Infringer not entitled to so-called jobber's profit in steel used in infringing structures.**

Under the broad, basic theory that an infringer shall be permitted to retain no financial benefit from his illegal act, on which the turning over of the profits from the infringement to the patentee rests, one infringing a patent in connection with the construction of reinforced concrete floors, was not entitled to retain a so-called jobber's profit on steel, consisting in the rise in price between the time of its purchase and the time of its use in the infringing structures.

**20. Patents ⚷⟹318(4)—Patentee entitled to profit on sale of floor plans and steel for supports in connection with contracts for infringing concrete floors.**

Where defendant, who infringed a patent in connection with the construction of reinforced concrete floors, and in connection therewith furnished plans and steel for the floors and floor supports, would not have secured the contracts, except for the patented feature of the floors, the patentee was entitled to the profit on the sale of plans and steel for supports, as well as the steel used in construction of the floor, under the rule that, when the infringing portion of the sale unit sells the article, the entire profit is recoverable.

**21. Patents ⚷⟹322—Determination that construction is mechanical equivalent cannot be whittled down on accounting by holding it an improvement.**

Where in suit for infringing patent for reinforced concrete flooring, supported by posts and floor plates on which belts of metallic network extending directly and diagonally from post to post and embedded in concrete were laid, defendant relied on the widening of the belts as distinguishing his construction from the patented construction, but the court held that such belts were mechanical equivalents of the patented construction, such determination cannot be revised or whittled down on accounting by declaring an excess in the width of the belts an improvement outside the patent to which part of the profit should be ascribed.

**22. Patents ⚷⟹318(4)—Profits from feature which was essential element to make mechanical equivalent effective not excluded.**

Where, under a patent for reinforced concrete flooring mounted on posts surmounted by floor plates, on which was laid belts of metallic network, the broader belts used by defendant were mechanical equivalents, cantilever column heads making the use of the broader belts possible, was not an improvement to which part of the profits could be ascribed, but merely an essential element to make the mechanical equivalent effective.

**23. Patents ⚷⟹318(4)—Profits from improvement not deducted, when element cannot be separated from remainder of construction.**

Where it was impossible to separate an element of an infringing construction claimed to constitute an improvement from the remainder of the construction, the profits could not be apportioned by ascribing part of them to such improvement.

**24. Patents ⚷⟹318(6)—Salary of infringer not allowed as expense of business.**

On patent infringement accounting, the infringer's claim for salary *held* not to be allowed as an expense of the business, where it was never charged or paid, except for one year, and was apparently an afterthought, as it would constitute a profit to the infringer from the infringement.

**25. Appeal and error ⚷⟹761—Attitude of trial judge should not be reiterated, and stated to be sole reason for rulings.**

While it is proper, in a respectful and dignified manner, to call the attention of the appellate court to the attitude of the trial judge dur-

ing the hearing as shown by the record itself, it is unnecessary to reiterate this claimed antagonistic attitude continually, and assert it to be the sole reason for the trial court's rulings.

26. Patents ⬅⟶325—Expense of accountant to be borne by defendant, whose inaccurate returns made accountant necessary.

Where the employment of an accountant in a patent infringement accounting was necessitated by the inaccuracy of defendant's returns concerning his business, the expense thereof should be assessed against him.

27. Patents ⬅⟶324(1)—Payment of small fine imposed for contempt in using certain construction held not to defeat right to review.

Where in patent infringement suit defendant was adjudged guilty of contempt with respect to a form of construction employed by him after the granting of an injunction and ordered to pay a fine to the United States as for criminal contempt, the payment of the fine, even if voluntary, did not affect his right to a determination of the question whether such construction infringed the patent.

28. Patents ⬅⟶324(5)—Return of fine imposed for contempt and paid to the government cannot be considered, when government not a party.

Where in patent infringement suit defendant was adjudged guilty of contempt with respect to a form of construction employed after the granting of an injunction, and ordered to pay a fine to the United States as for criminal contempt, the court cannot, on appeal from the final decree, in the absence of the United States as a party, consider the matter of the return of such fine.

29. Patents ⬅⟶324(2)—Remedial contempt proceeding is part of main case, and reviewable only by appeal from final judgment.

A remedial contempt proceeding for violation of an injunction in a patent infringement suit is a part of the main case, and an order therein is interlocutory in character, and reviewable only on appeal from the final judgment in the main case.

Appeal from the District Court of the United States for the District of Minnesota; Joseph W. Woodrough, Judge.

Suit by John L. Drum against Claude A. P. Turner, in which the Flat Slab Patents Company was substituted for the original plaintiff. From a decree for plaintiff for an insufficient amount, plaintiff appeals; and from such decree, and from an order in a contempt proceeding, defendant appeals. Judgment reversed, and case remanded. Order in the contempt proceeding reversed, with instructions to dismiss.

See, also, 283 Fed. 345.

A. C. Paul, of Minneapolis, Minn. (Edward Rector, of Chicago, Ill., on the brief), for substituted plaintiff.

Frank A. Whiteley, of Minneapolis, Minn., and Willard Eddy, of Omaha, Neb., for defendant.

Before HOOK and STONE, Circuit Judges, and WADE, District Judge.

STONE, Circuit Judge. These cases involve an accounting for infringements of patent No. 698,542, to Norcross, April 29, 1902, for a flat slab reinforced concrete flooring. In Drum v. Turner, 219 Fed. 108, 135 C. C. A. 74, the defendant Turner was held to have infringed claims 1, 3, and 4, and an injunction and an accounting were ordered. Drum who then owned the patent assigned to the Flat Slab Patents

⬅⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Company and the latter was substituted as plaintiff. After the injunction defendant employed a new arrangement of the reinforcing metal called the "Nevins" construction. Upon plaintiff's petition for his attachment for contempt the trial court held that the Nevins construction also infringed. It imposed a fine, but to enable defendant to speed a review by this court it made the fine payable to the United States as for a criminal contempt reviewable by writ of error, instead of by appeal, as from a civil or remedial order at the conclusion of the final accounting. Defendant took a writ of error, but on plaintiff's motion this court dismissed it. Turner v. United States, 238 Fed. 194, 151 C. C. A. 270. We held the contempt proceeding was essentially civil or remedial for the protection of plaintiff's property interests and its character should not have been changed for defendant's convenience. Defendant then adopted still another construction called the "New Spiral," practically the same as the "Nevins," with the exception of a feature that impressed Judge Morris in the contempt proceeding, and plaintiff claims that it also infringed.

The master to whom the trial court referred the cause for an accounting divided the time of his inquiry into three periods: First, prior to August 23, 1911; second, August 23, 1911, to August 1, 1915; and, third, after August 1, 1915. In the first period questions of pleading, marking and notice to defendant are involved. In the second are the main questions of accounting. The third involves defendant's responsibility on account of his new constructions which the master held to infringe. The master found plaintiff should recover $188,483.76 as profits in periods 1 and 2 and royalty in period 3. He made an alternative finding of $121,151.08 as damages, wholly on a royalty basis for the entire time. Upon exceptions and further specific findings by the master the trial court reduced the entire recovery to $6,983.81 for defendant's profits in the second period and entered a final decree for that amount. The plaintiff appealed from the first decree. The defendant also appealed from that decree and from the interlocutory order in the contempt proceeding involving infringement by his "Nevins" construction.

A disposition of the first and third branches or periods of the case will tend to narrow and clarify the questions involved in the second period.

### First Period.

[1, 2] It is not clear that it was intended in the original bill to claim damages prior to the assignment from Norcross to Drum, July 19, 1911. In one view the bill is broad enough and yet there are specific averments tending to induce a belief to the contrary. This latter conclusion is supported by the averments of the bill on the subject of notice under section 4900, Rev. Stat. (section 9446, Comp. Stat. 1916). This section requires as a prerequisite to recovery of damages either a marking of the patented article or tagging of the package if so contained, or failing these, then notice to the defendant of his infringement. The bill does not aver that the patented article was marked or tagged. It is obvious that such marking or tagging is here practically

impossible so far as notice to the public, which is the object of the statute, is concerned, and we can judicially notice that fact without averment. The claim and specifications of the patent relate to a particular placement and arrangement of strips of metallic network which are permanently concealed from view the moment the cement is poured. We may assume, therefore, from the absence of averments and the nature of the invention, that there was no marking and that plaintiff had to rely upon individual notice to defendant. Indeed, the bill proceeds upon this theory. The original bill of complaint contains in paragraph VII the following:

"And your orator further shows unto your honors that the said defendant, Claude A. P. Turner, well knowing the premises and your orator's rights in the aforesaid letters patent, but contriving to injure your orator and deprive him of the exclusive use and enjoyment of the benefits, advantages and profits which might and otherwise would accrue to him from the said letters patent, did, as your orator is informed and believes, and so avers, after the grant of said letters patent and after the ownership thereof was vested in your orator, and within the term of seventeen years after the grant of said letters patent, and before the beginning of this suit, at Minneapolis, Minnesota, and elsewhere in the United States, and without the license or consent of your orator, and against the will of your orator,' and in violation of his rights, and in infringement of said letters patent, unlawfully and wrongfully, and in defiance of the rights of your orator, make, or cause to be made, and use, or cause to be used, and sell," etc.

This is the formal customary form of averment and is not one of individual notice of infringement required by R. S. § 4900. Paragraph VIII of the bill is as follows:

"And your orator further avers, on information and belief, that said defendant has had actual notice of the said infringement from and after the date when he so began the infringement, and your orator further avers that he has given due notice to the defendant and to public that the reinforced concrete floors being manufactured by the defendant are infringements of the above specified letters patent No. 698,542."

[3] The latter part of this paragraph contains the affirmative averment that notice was given, but it will be observed that the date is not mentioned. We can find in the original record in Drum v. Turner no amendment of the bill changing the situation as regards notice. Defendant's answer, paragraph 9, contains the following:

"This defendant admits that the complainant, acting in pursuance of or in accordance with the plans formulated by and to which complainant O. M. Leonard, and John Wunder and others, aforesaid, are parties, sent notices to customers and prospective customers of this defendant, in which reference was made to a pretended infringement of the said Norcross patent, which notices in the month of September, 1911, were brought to the attention of this defendant," etc.

Then followed averments that the notices were to damage defendant's business and that he demanded of plaintiff that he either discontinue the notices or bring suit for infringement, etc. This excerpt may be taken as an admission that the notice of infringement of which complainant specified no date occurred as early as in September, 1911. Paragraph 25 says:

"This defendant denies all unlawful acts with which he is by said bill charged," etc.

These last two averments in the answer are sufficient, we think, to put in issue a charge that defendant was notified as required by section 4900 earlier than September, 1911. We cannot find in the record of Drum v. Turner any proofs upon the subject of notice, and of course none of marking. We do find at pages 658 et seq. of the accounting record a "list of exhibits filed by the respective parties in this proceeding" under the heading "Plaintiff's Accounting Exhibits" the following: "No. 16, letter Drum to Turner of Aug. 23, 1911," offered at page 127 of that record. At the page of the accounting record referred to (127) appears the following:

"Mr. Paul: Counsel for plaintiff offers in evidence a letter from John L. Drum to the defendant C. A. P. Turner dated August 23, 1911, and requests that the same be marked 'Plaintiff's Accounting Exhibit No. 16.' And it is conceded by defendant's counsel that this letter was received by defendant about the date that it bears."

A copy of this letter appears in a typewritten sheet near the end of the "Book of Exhibits" made up for the appeals now before us. It is a notice of infringement to Turner, and so far as we can gather it is the only evidence of a notice of infringement under section 4900. Plaintiff did not rely upon the contention, found in his favor by the master and now urged, that the pleadings presented no issue of notice of infringement, but he offered the letter and it was received as part of his case on the accounting. This date, August 23, 1911, established the end of the first period and the beginning of the second.

[4] The master found August 23, 1911, as the date of notice to defendant. In the excerpt from his report, next set forth, his statement that the bill of complaint alleges that notice was given on that day is incorrect. We are unable to find any such averment in the bill. He says (Record 687):

"The bill of complaint is silent as to the marking, but it alleges that notice was given, as hereinbefore stated, on August 23, 1911. This notice was in substance admitted by the answer and proved by plaintiff in his Accounting Exhibits Nos. 16 to 17—3 inclusive. The authorities hold that plaintiff is entitled to a recovery prior to the date of notice when the pleadings are silent as to the marking of the plaintiff's structures with the word 'patented,' and the date of the patent. This matter, not being in issue in the case, it is too late for the defendant to raise it before the master."

He then cites various authorities.

Hart & Hegeman Mfg. Co. v. Anchor Electric Co., 92 Fed. 657, 34 C. C. A. 606, by the First C. C. A. This case is not in point. The question was one of infringement, not of accounting. And though the answer alleged "that the complainant had made or sold his switches without marking them or the packages containing them 'patented' and without notifying the defendants of any alleged infringement" it was held naturally and necessarily that this did not relieve defendant from the charge of infringement. Section 4900, R. S., relates to the accounting for infringement, not to the fact of infringement itself.

Pettibone, Mulliken & Co. v. Pennsylvania Steel Co., 134 Fed. 889, Circuit Court (Pennsylvania). This also is not in point. The bill contained "an averment that the patented machine of complainants was marked in accordance with the requirement of Rev. Stat. § 4900 (U.

S. Comp. St. 1901, p. 3388). The answer neither affirmed nor denied, nor did it put the complainants to the proof of this allegation. No evidence was offered to establish the affirmative of this averment and no objection was taken at the final hearing to this failure to introduce evidence on this point. It was not raised until the day fixed for entering the decree." In the case at bar there was no averment of marking and as found by the master the averment of notice to defendant August 23, 1911, was substantially admitted and·proved.

Campbell v. Mayor of New York, 81 Fed. 182, Circuit Court. In this case it was said:

"Neither the plaintiff, nor any one for or under him, has made or sold this patented device; and he does not come, according to this construction, within this prohibition. The defendant had notice, July 11, 1877, which was alleged in the bill, and has been suggested to have worked an estoppel as to prior infringements. But the defendant did not act upon the notice with respect to prior, or even subsequent, infringements, so as to make the claim for the prior infringements inequitable because of that precaution as to further infringement, and the insertion of it in the bill would not be any express or implied waiver of other grounds of recovery."

The court here seems rather careless in its phraseology. Of course there was no estoppel, nor does the immunity of an infringer from liability to damages prior to notice as required by section 4900, R. S., depend upon his ceasing infringement after notice. Equity and inequity have nothing to do with the case. The statutory provision is a substantive one.

Metallic Extraction Co. v. Brown, 104 Fed. 345, 43 C. C. A. 568. This case arose in this court and was a step in a somewhat noted litigation in subsequent phases of which Judge Hook participated judicially. The third paragraph of the syllabus is as follows:

"An appeal taken under section 7, Act March 3, 1891 (26 Stat. 828), as amended by Act Feb. 18, 1895 (28 Stat. 666), from a decree awarding an injunction against infringement of a patent and authorizing an accounting as to damages, and which has not become final, does not raise any question as to the damages recoverable under the pleadings and proofs."

This case is not cited by the master. We refer to it here for its bearing on plaintiff's contention as to the scope of the opinion in Drum v. Turner, in which an injunction and an accounting were awarded. The acts of Congress recited in the syllabus quoted are now, with some later amendments not important here, section 129, Judicial Code. They are the acts which govern the appeal in Drum v. Turner. The decree of injunction and for an accounting were interlocutory, not final, in the sense of the above case of Metallic Extraction Co. v. Brown.

To the same effect is Racine Engine & Machinery Co. v. Confectioners' Machinery & Mfg. Co., 234 Fed. 876, 148 C. C. A. 474 (7th C. C. A.). The court said:

"Over the accounting and all its incidents the District Court retains jurisdiction until final decree thereon is entered."

And in Lederer v. Garage Equipment Mfg. Co., 235 Fed. 527, 149 C. C. A. 73, the same court on an appeal from an interlocutory order granting an injunction and referring the case to a master for an ac-

counting in a patent case, referred to the statute providing for appeals in such cases and said:

"At this time no question can be considered concerning the rightfulness of any final accounting decree which may hereafter be rendered."

Another case cited by the master is Tuttle v. Claflin, 76 Fed. 227, 22 C. C. A. 138, by the Second C. C. A. Neither is this case to the point for which he cited it. The court says:

"The bill in equity was silent upon the allegation called for by section 4900 of the Revised Statutes that the complainants marked their machines or notified the defendants of the infringement. After alleging the invention and grant of the patent, and the assignment, the pleader averred that the defendants, knowing the premises, infringed. This is not an averment that they had notice or knew that their machines infringed. The answer specially traversed the allegations in regard to infringement, but was likewise silent upon the subject of notice. The defendants introduced a witness in January, 1884, who made the customary proof of good faith, and that, when they were notified, they stopped the use of the machines. No point was made upon final hearing, or during the 9½ years before the master, in regard to the absence of the allegation or of the proof of notice. No exception upon that subject was taken to the report of the master. The point was not made before the court when the decree was made final, and appeared for the first time in the assignment of errors, more than 16 years after the answer was filed. The question is not whether the rules of pleading required the allegation of notice in a bill in equity which asked for damages and profits (that question is settled in Dunlap v. Schofield, supra); but it is whether the neglect to take notice of the omission, either by answer or in any other form, until after the final decree, was not a waiver of the want of notice."

[5] It will be observed that nowhere, either in the pleadings, the accounting before the master, exception to his report or in the trial court was the question raised. The court therefore very properly said:

"It is too late to raise for the first time in an appellate court technical questions of pleading or proof which are not jurisdictional in their character, and which were not raised either in the pleadings or before the trial courts, where defects might have been remedied, and which must therefore be considered to have been waived."

In the case at bar the pleadings do contain some averments upon this subject. The question was raised before the master and he divided the time of accounting into periods so that his decision against the defendant might be reviewed without a re-reference. It was again raised before the trial court and it held against the plaintiff. We have no doubt that the trial court might, had it thought it necessary, which it did not, have allowed the parties to amend their pleadings in any substantial manner, not affecting the fact of infringement by defendant's structures before this court in Drum v. Turner. Especially might it have done so to conform to the proofs. It must be borne in mind that the trial judge from whose final decree this appeal was taken, had as much power over the proceedings as Judge Willard who entered the decree of injunction and for an accounting when Drum v. Turner went back. As shown by Metallic Extraction Co. v. Brown, supra, by this court, the accounting questions do not arise on the appeal from the injunction, wherein the fact of infringement is or is not established. Moreover, in Drum v. Turner the trial court (Judge Wil-

lard) held defendant had not infringed, and plaintiff appealed. In such a case questions of accounting would naturally not arise in the appellate court, aside from the rule of practice. After Drum v. Turner was reversed and went back to the District Court an "interlocutory decree" was entered (June 9, 1915; Accounting Record, p. 836) on motion of plaintiff's counsel. It does not attempt to prejudge this question of marking or notice. It is in the customary form of such decrees.

The master also cites the following cases from the Supreme Court: Sessions v. Romadka, 145 U. S. 29, 12 Sup. Ct. 799, 36 L. Ed. 609; Dunlap v. Schofield, 152 U. S. 244, 14 Sup. Ct. 576, 38 L. Ed. 426; Coupe v. Royer, 155 U. S. 565, 15 Sup. Ct. 199, 39 L. Ed. 263.

In Sessions v. Romadka the court said (145 U. S. 49, 12 Sup. Ct. 804, 36 L. Ed. 609):

"Further objection is made to a recovery of profits in this case upon the ground of a noncompliance with the requirements of Rev. Stat. § 4900, in failing 'to give sufficient notice,'" etc.

Then follows the language of the section. Then follow statements that the plaintiff had marked certain units of the patented article and so forth and so on; also that there was proof that defendant had dealt with the patentee and had actual knowledge of the patent, etc. The court then continues:

"Although there is an averment in the answer that the defendants have no knowledge or information save from said bill of complaint, whether the catches were marked with the word 'patented,' etc., and therefore deny the same, there is no denial of their knowledge that the Taylor device was patented; and in view of the fact that all letters patent are recorded, with their specifications, in the Patent Office, a record which is notice to all the world, it is not an unreasonable requirement that the defendant, who relies upon a want of knowledge upon his part of the actual existence of the patent, should aver the same in his answer, that the plaintiff may be duly advised of the defense."

This opinion is hardly an authority in this case.

The next case is Dunlap v. Schofield by Justice Gray, and it, together with Coupe v. Royer, marks a departure from the earlier holdings. After reciting section 4900, R. S., Justice Gray says:

"The clear meaning of this section is that the patentee or his assignee, if he makes or sells the article patented, cannot recover damages against infringers of the patent, unless he has given notice of his right, either to the whole public by marking his article 'patented,' or to the particular defendants by informing them of his patent and of their infringement of it.

"One of these two things, marking the articles, or notice to the infringers, is made by the statute a prerequisite to the patentee's right to recover damages against them. Each is an affirmative fact, and is something to be done by him. Whether his patented articles have been duly marked or not is a matter peculiarly within his own knowledge; and if they are not duly marked, the statute expressly puts upon him the burden of proving the notice to the infringers, before he can charge them in damages. By the elementary principles of pleading, therefore, the duty of alleging, and the burden of proving, either of these facts is upon the plaintiff.

"In the present case, although the plaintiffs had manufactured and sold goods with the patented design upon them, they made no allegation or proof that the goods were marked as the statute required. They did allege in their bill that they notified the defendants of the patent and of their infringement;

but this allegation was distinctly denied in the defendants' answer, and the plaintiffs offered no proof in support of it. They could not, therefore, recover, even if this were a suit for damages within section 4900 of the Revised Statutes."

It appeared that plaintiffs waived all right to an account of profits or to other damages but were allowed a recovery in the nature of a penalty. The patent had expired at the time of the decision in the Supreme Court. The decree was reversed and the case remanded with directions to dismiss the bill. This certainly is not an authority for the conclusion of the master.

Coupe v. Royer, 155 U. S. 565, 583, 15 Sup. Ct. 199, 207 (39 L. Ed. 263), was an action at law for damages for infringement of a patent. The court said:

"It is claimed that the plaintiffs have neither alleged nor proved that the machines constructed under the patent have been marked as the statute requires; that hence the only ground upon which they can recover damages is by proof of actual notice of infringement given to the defendants; and that the court erred in instructing the jury that no notice was necessary, and in thus taking away entirely the question whether any actual notice of infringement ever was given.

"The plaintiffs contend that this point was not made at the trial; that it was not brought to the attention of the court by any proper request, and that the defendants should have set this matter up either by a plea or in a notice of special matter, so that the plaintiffs could have been prepared to meet the issue with evidence, and they cite Rubber Co. v. Goodyear, 9 Wall. 788, 801, and Sessions v. Romadka, 145 U. S. 29, 50, as holding that, in equity cases, notice of such ground of defense ought to appear in the answer, and that it is too late to raise such a question after the case has gone to a master for an account."

Then follows in the opinion of the Supreme Court this significant language answering the above contention:

"But in Dunlap v. Schofield, 152 U. S. 244, 247, also a case in equity, it was said: [Then the court sets forth at large the language we have already quoted from Dunlap v. Schofield saying in substance that one of two things, marking or notice to the infringer, is made by the statute a prerequisite; that each was an affirmative fact and is something to be done by him; that whether his patented articles have been duly marked is peculiarly within his knowledge, and if not marked the burden of proving notice to the infringers is upon him.]"

Then the court concludes:

"By the elementary principles of pleading, therefore, the duty of alleging, and the burden of proving, either of these facts is upon the plaintiff."

It would thus appear that the old case of Rubber Company v. Goodyear, 9 Wall. 788, 19 L. Ed. 566 has been practically overruled and that Sessions v. Romadka has been modified so far as inconsistent with Dunlap v. Schofield. And it is evident also that this change is in accord with the orderly principles of pleading and practice. The language of section 4900 is such that there can be no reasonable doubt but that the burden of showing compliance in order for recovery of damages is upon the plaintiff, that is to say, by pleading and proof.

In view of all of the above our conclusion is that defendant's defense under section 4900 was open before the master and before the trial court from whose decree the appeals before us were taken.

[6] Furthermore, the great weight of authority by expressed holding and by inferences from judicial language is that the term "damages" in section 4900 is used in its general sense and includes profits as a measure of damages. There are many cases to this effect and it may accurately be said that their weight is overwhelming as compared with those to the contrary. We think there are but two directly to the contrary: One by District Judge Thompson in Rollman Mfg. Co. v. Universal Hardware Works, 207 Fed. 97, and Ashley v. Weeks-Numan Co., 220 Fed. 899, 136 C. C. A. 465 (Second Circuit); and in the latter case the rule was largely assumed rather than laid down upon consideration. It is also contrary to one or more other cases in the same court. The following is a brief synopsis of the cases which either hold directly or assume that the term "damages" includes profits also.

General Electric Co. v. Star Brass Works (C. C.) 109 Fed. 950 (Mich.). The opinion concludes with this sentence:

"The complainant is entitled to a decree in the usual form, but no accounting for profits and damages before notice was served on the defendant."

Westinghouse Air Brake Co. v. N. Y. Air Brake Co. (C. C.) 111 Fed. 741 (N. Y.). Opinion by Coxe, District Judge, afterwards Circuit Judge in the Second Circuit. He said:

"As the patent expired pendente lite no injunction can be granted, and as there is neither proof that the complainant's device was marked 'patented,' nor proof of actual notice, as required by law (Rev. Stat. § 4900), it is manifest that there can be no accounting for profits and damages, except, perhaps, from the date of the commencement of the action."

Lorain Steel Co. v. New York, etc., Co. (C. C.) 153 Fed. 205 (N. J.). Here there was an extensive consideration of pleadings under section 4900, much like those at bar. The court said:

"I think the burden of proof was on the complainant in this case to establish infringement after notice, and that it is only entitled to such damages and profits, if any, as may appear to have accrued after notice," etc.

Westinghouse Electric & Mfg. Co. v. Condit, etc., Co. (C. C.) 159 Fed. 154 (N. Y.). Judge Ray discussed two questions: (1) Whether the complaint alleged and the answer admitted notice under section 4900; (2) whether "damages" as used in the section include profits. He answered the last question in the affirmative. He also held that the charge of notice in a complaint must be clear and specific.

American Caramel Co. v. Mills, 162 Fed. 147, 89 C. C. A. 171, Third Circuit. The court held generally upon a failure of proof on an issue of marking and notice that there would be "no account for anything preceding the filing of the bill."

Eastern Dynamite Co. v. Keystone Powder Co. (C. C.) 164 Fed. 47 (Pa.). This case follows the last above in confining the accounting to period after filing of the bill.

Gibson v. American Graphophone Co., 234 Fed. 633, 148 C. C. A. 399, Second Circuit. District Judge Mayer of New York refused an accounting because plaintiff had not given notice as required by section 4900. There had been no marking. The decree refusing an accounting was affirmed by the Circuit Court of Appeals. It does not ap-

pear whether plaintiff's bill asked both profits and damages. This is the same court that decided Ashley v. Weeks-Numan Co., 220 Fed. 899, 136 C. C. A. 465, on which plaintiff here relies.

Lichtenstein v. Phipps, 168 Fed. 61, 93 C. C. A. 483, Second Circuit. It was conceded that defendant had no actual notice of the patenting of the design; so the question was whether there was a sufficient marking under section 4900. The court held there was not and then added:

"Inasmuch as complainant admits that no labels other than these were affixed to anything, he has failed to make sufficient proof of notice to entitle him to recover damages, profits, or statutory penalty."

This case is also by the same court as Ashley v. Weeks-Numan, supra.

Closz & Howard Mfg. Co. v. J. I. Case, etc., Co., 216 Fed. 937, 941, before Judge Willard of the Minnesota District. It appeared that plaintiff neither marked nor gave notice for a long period. The court said:

"Under the circumstances of this case, the plaintiff is clearly not entitled to an accounting for profits or damages prior to April 28, 1909."

It appears that this was the earliest date at which the court could find notice to defendant. The contention was (page 938) that the plaintiff, not having complied with section 4900, "is not entitled to recover damages or profits," etc.

American Caramel Co. v. White, 234 Fed. 328, 148 C. C. A. 230, Seventh Circuit. The bill charged that the patented machines were duly marked, that complainant had caused notice to be given defendant of his infringement, had requested him to desist, but defendant had disregarded the notice. The only other allegation on the subject was that "the defendant, well knowing the premises and the rights accruing to your orator aforesaid," infringed. The answer specifically denied the marking and the disregarding of any notice. There was a general denial of each allegation of the bill not specifically answered or denied. The court held that if the bill was sufficient as to knowledge of infringement the answer was sufficient as a denial. There are some points of resemblance to the pleadings before us. There was no proof of marking, nor proof of notice to defendant except a stipulation that a notice was given "subsequent to the grant of the letters patent and prior to the institution of the suit." No date was mentioned in the stipulation. The court said also there was no proof of the date of notice or that the infringing sales were before or after it; and then said:

"There can, however, be no recovery of damages or profits when a patentee has failed," etc.

The plaintiff was given an opportunity to show when the notice was given and that defendant infringed afterwards.

"If such proof be made the accounting of profits and damages will proceed. Such accounting, however, must be limited to acts of infringement committed after the notice," etc. 234 Fed. 333, 148 C. C. A. 235. "If no proof of infringement after the notice is offered, an accounting will be unnecessary,

and in that event the District Court will dismiss the bill of complaint." (The patent had expired pendente lite.)

Ashley v. Weeks-Numan Co., 220 Fed. 899, 136 C. C. A. 465, Second Circuit, upon which plaintiff relies, assumes without discussion that, of course, in absence of notice, the accounting may proceed for prior profits—just as a number of cases, including two from the same court assume that the damages which cannot be recovered prior to notice embrace profits.

Traver v. Brown (C. C.) 62 Fed. 933 (Vermont). There was no marking or notice of infringement. The court cited Dunlap v. Schofield. It said plaintiff seemed to be entitled to an injunction only.

Michigan Stove Co. v. Fuller-Warren Co. (C. C.) 81 Fed. 376, 379 (Wisconsin). Judge Seaman, afterwards Circuit Judge, said:

"No proof is furnished under section 490, Rev. Stat., and there can be no decree for damages or profits as the case now stands."

He had previously held plaintiff entitled to an injunction.

National Co. v. Belcher (C. C.) 68 Fed. 665 (Pennsylvania). Circuit Judge Dallas said:

"Upon the authority of Dunlap v. Scofield, 152 U. S. 244, 14 Sup. Ct. 576, I sustain the point made for respondents, that there can be no recovery for damages and no accounting for profits, because the complainant has failed to allege in the bill of complaint," etc.

In Allen v. Deacon (C. C.) 21 Fed. 122, it was held in a suit in equity, that, in the absence of marking or notice, neither damages nor profits can be recovered.

Lowell Mfg. Co. v. Hogg (C. C.) 70 Fed. 787 (Massachusetts), Putnam, Circuit Judge. The bill was for penalties, profits and damages. The court said:

"The bill failed to allege that the patented articles were marked as provided by sections 4900 and 4933 of the Revised Statutes, and the answer made no denial of this fact. Apparently, under Rubber Co. v. Goodyear, 9 Wall. 788, 801, the point could not be taken by the defendant, so far at least as applies to an accounting for profits. But this case was explained in the later case of Dunlap v. Schofield, 152 U. S. 244, 249, 14 Sup. Ct. 576, and under it and Coupe v. Royer, 155 U. S. 565, 583, 15 Sup. Ct. 199, it is open to the defendant here, so far at least as concerns the damages and penalties claimed. The principle applies as well to an accounting for profits, which, after all, is only one form of damages."

Matthews & Willard Mfg. Co. v. National, etc., Works (C. C.) 71 Fed. 518 (Pennsylvania). Circuit Judge Dallas found proof of marking insufficient and no infringement after notice. He used the term "damages" and directed a decree for "injunction only."

Our conclusions, based upon the above discussion, are that the pleadings sufficiently presented the issue of recovery for infringement under section 4900; that there was no evidence of labeling or marking; that actual notice of infringement was given in the letter of August 23, 1911; that there can be no recovery for alleged infringement prior to this date; that recovery should begin with this date, as this letter was received shortly afterwards; that the statute (section 4900) covers both damages and profits, therefore, recovery may be had for

either to the extent justified by the evidence. The trial court was, therefore, correct in excluding recovery for the first period, which was back of August 23, 1911.

### Third Period.

Beginning with the commencement of this period, the defendant abandoned the exact form of reinforcement which had been declared an infringement and put out two other forms which he regarded as substantially different and without the infringing features. These forms are denominated the Nevins and New Spiral constructions. There is no claim of infringement, during this period, except from these two new constructions. Defendant claimed that neither infringed the patent and, therefore, there should be no recovery during this period. He urges on this point two matters: That the new constructions followed the art prior to the patent and, therefore he had a right to employ them; that a comparison of the new constructions with the old infringing construction will show a substantial difference. Plaintiff contends that the prior art cannot be considered in the accounting proceeding, and that a· comparison will show the new construction to be but colorable changes from the construction declared to be an infringement. The master adopted plaintiff's view and refused to consider testimony tendered respecting the prior art. He found from a comparison that the new constructions were only colorably different and, therefore, were infringements. The court rejected this view, seemingly holding that a careful study of the prior art was necessary "to make that kind of a comparison wisely and properly, and determine the ultimate question of infringement." As he considered that "the testimony before the master did not bring out a complete history of the prior art * * * and that it ought not to be done here, as a part of this accounting at this time," he sustained exceptions to the master's action concerning this period and allowed no recovery therefor.

[7-10] In a patent infringement case two kinds of relief may be afforded: Prevention of future infringement and compensation for past infringement. The latter ordinarily requires an accounting to ascertain the amount due. Such is the sole purpose and function of an accounting in an infringement case. At the time the accounting is reached, the validity and scope of the patent have, for all purposes in that case, been determined by the adjudication of infringement and are, in the accounting, closed from further attack. No issue can be brought into the accounting which has any object or effect, other than to aid in determining the amount due. An accounting in a patent case is no different in this respect from an accounting in any other sort of action. An unreal divergence sometimes seems to appear where the defendant has also used a construction differing from the precise one covered by the evidence in the infringement trial. This proposition is loosely expressed as being whether the new construction is an infringement. A more accurate statement would be that it is whether the new construction is within what the decree has declared to constitute an infringement. The accounting master finds his sole authority within

the boundaries of the order appointing him. Such orders comprehend, are based upon and limited by the decree declaring infringement. The one object of his appointment is to take an accounting. The one object of that accounting is to give effect to the infringement decree in so far as recovery therefor is concerned. That decree is based upon pleadings and supporting proof that certain things made, sold or used by defendant are infringements. The most that the court could decree would be that such things are made, sold or used by defendant and are infringements. The problem of the master, therefore, in ascertaining whether a new construction is to be covered by the accounting, becomes one of comparison between that construction and the one declared to infringe. This comparison is along the line of infringing elements or features. The identity of such elements or features and the respect in which they constitute infringements can be found by the master sometimes in his report or more often in his opinion which may be treated as an explanation of the report. No aid in understanding the action of the court can be found in facts not before the court as evidence and not judicially noticeable. Evidence of the prior art can find no initial entrance into the case through the accounting. The place of prior art in patent law is to invalidate or limit the scope of the patent. The suggestion that it can be introduced for the first time in the accounting for the purpose either of modifying or of interpreting the infringement adjudication is not sound. The duty of the master is to apply, not to alter the decision of the court appointing him, and he is not aided in understanding that decision by facts which the court did not have in mind when it acted. The master here properly excluded the offer of the prior art not introduced during the infringement trial.

That leaves the question of whether or not the Nevins or New Spiral constructions were infringements.

[11] Turner is a civil engineer of ability, who has specialized in reinforced concrete construction. One problem to which he has devoted his talents in that line is the construction of flat slab girderless reinforced concrete floors supported by columns and sustained by particular arrangements of the reinforcing embedded in the concrete of the flooring. He has obtained several patents therefor (letters No. 985,119, issued February 21, 1911, and No. 1,003,384, issued September 12, 1911) and has been connected with much construction of that character. Those patents and that construction have been in litigation several times. The first of these suits was the controversy in which this accounting was ordered. It is an infringement suit brought by the remote assignee of letters patent No. 698,542, issued April 29, 1902, to Orlando W. Norcross. His two patents have been litigated in the infringement suits brought by him. In Turner v. Moore, 211 Fed. 466, 128 C. C. A. 138, in this court, claims 1, 4 and 6 of No. 985,119 were annulled because of anticipation. In Turner v. Deere & Webber Building Co., 249 Fed. 752, 161 C. C. A. 662, also in this court, claims 1, 2, 4, 6 and 8 of No. 985,119 were annulled upon the same ground. In Turner v. Lauter Piano Co., 248 Fed. 930, 161 C. C. A. 48, in the Third Circuit, claims 4 and 8 of No. 985,119 and claims 1, 5, 10, 11,

16 and 17 of No. 1,003,384 were annulled for the same reason. The great obstacle in his path has been the Norcross patent involved in this suit. The so-called "new constructions," Nevins and New Spiral, now to be considered in this accounting, were evidently the results of his attempts to avoid the Norcross patent. As these two new constructions do not differ in any way important to this controversy, they will not be distinguished. The present question is whether the changes or differences between these constructions and his old construction which was declared to infringe are, in a patent sense, substantial, or only colorable. In the old construction four wide belts of small iron rods were crossed cobhouse fashion over the supporting columns so that they extended directly and diagonally from column to column. The influence of the support at and near the column head was extended by a rod reinforcement forming a circumferential cantilever head embedded in the concrete of the floor. The course of the rod belts through the concrete floor was near the upper surface at the columns and sagging to near the lower surface in the center between the column spaces. In the new constructions the cantilever column supports are still employed in substance as also are the direct belts of rods from column to column. The change is that the diagonal belts are not passed over the column supports, but narrower belts are passed transversely across the direct belts midway between the columns; at each of these crossing places a rod or bolster running in the direction of the direct belts is attached; then a network of rods running crosswise and lengthwise is superimposed thereon. The two constructions are well illustrated by figure 13 of Turner's patent No. 1,003,384, and by the "fourth stage" upon the blueprint illustrating the New Spiral mushroom construction (Plaintiff's Accounting Exhibit 18). The differences claimed by defendant are as follows: (a) Greater reinforcement at the mid-span between columns; (b) no network of belts all passing over the columns; (c) no network of belts except in the oblique (transverse) rods; (d) oblique belts do not pass over columns; (e) oblique belts lying at bottom of flooring slab have a different function; (f) no "cobhouse fashion" crossing of belts over the column supports; (g) the central area of the floor panel (between four supports) not carried directly from the column supports, but is sustained by the layer of crossed rods covering the entire panel; (h) the oblique belts cannot be identified with the old diagonal belts because they lie midway between the positions of the former diagonal belts, their properties are opposite (one being in tension over the tops of the columns, the other in tension under the bottom of the panel center); (i) the oblique belts lie at the bottom of the flooring slab, while the diagonal belts rise from the bottom at the panel center to the top as they pass over the column supports; (j) no belts radiating from the column supports as in the old construction. The defendant has generalized these detailed differences as follows:

"* * * A difference in the distribution of metal, operating or furnishing a couple to hold up the load in an entirely different part and portion of the concrete from the old Turner construction, and operating after the manner of a different pattern of the reinforcement in plan, the Turner

old construction being essentially a radial type in pattern, the Turner new construction being in no sense radial."

Professor Eddy, the main expert witness for defendant, also sums up the matter as:

"This arrangement in this new construction distributes the tensions differently from the manner in which they were distributed in the old Turner mushroom construction, and in a manner highly economical and advantageous. It does so because the pattern or arrangement of the steel is one based on principles entirely different from that in the Turner construction."

The above differences seem outlined in the testimony of Flather (Ac. R. 208, 210), Eddy (Ac. R. 235, 236) and Turner (Ac. R. 324) and are the only differences claimed in the brief (Def. Brief, Vol. II, pp. 59–62).

[12] The purpose of placing any rods in the concrete floor slab is to provide tension to carry the load. Every additional rod or every different placement in the cement of any rod has a theoretical and possibly a more or less practical effect upon the tension. Every change in number, size or arrangement of rods obviously cannot be dignified as invention. Such change must accomplish a new result or an old result in a new manner. Long before Norcross, tension, or tensile strength, had been supplied to concrete construction by embedding metal elements therein. The novelty of the Norcross discovery was in the arrangement of the reinforcing. This arrangement was in belts over supporting columns so that there was thereby accomplished a new and valuable result, to wit, the elimination of floor girders in concrete buildings. The method of that arrangement was all-important.

This view of the narrow scope of the Norcross patent is shown by the decision, on infringement, in this case. The contention of Norcross, in that hearing, was, in effect, that his patent was broad enough to cover any flat slab reinforced concrete floor construction which, dispensing with girders, was held up by metal wire or rods running over or supported by columns. But this court sustained no such broad view of the scope of the Norcross patent. The opinion confines that patent to the particular construction set out, namely, by strips of reinforced metal—

"which were laid lengthwise of the building, crosswise of the building, and diagonally over the tops of and supported by the columns, so that a strip lengthwise, a strip crosswise, and a strip laid diagonally would lie on or under each other over the top of each post in cobhouse fashion and leave only small triangular spaces in any rectangular space between four posts free from this metallic network." Drum v. Turner, 219 Fed. 188, at page 189, 135 C. C. A. 74, at page 75.

Further, in comparing the Norcross patent construction and the Turner construction there involved, the court said (219 Fed. 190, 135 C. C. A. 76):

"What it is important to know and consider is that Turner imbeds in his concrete flooring a metallic network consisting of belts of small iron rods from three-eighths to one-half an inch in diameter laid lengthwise of the building, crosswise of the building, and diagonally so that on the top of each post there lie one of these belts extending lengthwise, one of them extending crosswise, and one of them extending diagonally in cobhouse fashion, so

that the concrete flooring is supported by these belts of rods and the floor itself by the posts alone without beams or girders, and so that these belts of rods cover practically all the space between the posts. These belts of small iron rods differ from the strips of wire netting of Norcross in that they are made of the rods from three-eighths to one-half an inch in diameter, while Norcross' strips are made of heavy wire netting three-eighths of an inch in diameter, in that the belts are wider than the strips of wire netting, and in that at the places where they lie over the posts they are imbedded in the upper, while Norcross' strips are imbedded in the lower, part of the concrete flooring. But they support the flooring and dispense with girders and beams by the use of the same principle by means similar, if not equivalent, to the strips of Norcross disposed in the same way."

And, in determining the contentions advanced by Turner respecting the matter of mechanical equivalence, the court said (219 Fed. 193, 135 C. C. A. 79):

"The answer to all of these contentions is that the basic principle or mode of operation of the defendant's construction of beamless flooring is strips or belts of large wires or small rods imbedded in concrete and laid over the tops of columns in the way described in and secured to Norcross by his patent, whereby a monolithic floor inclosing the wires or rods in a single panel, however large the building, is made to sustain itself and its load on separate columns without girders or beams."

It is thus seen that the opinion and decision on the main case, in which is this accounting, were that the Norcross patent was limited to the particular construction or arrangement and, of course, the mechanical equivalents of that construction. The Norcross arrangement took up the strain or tension of all parts of the floor away from the column supports by reinforcing belts of wires or rods, every one of which passed over those supports. To cover the floor area with sufficient enforcing material required the broad direct and diagonal belts. All of those belts functioned in precisely the same manner. It was the method of arrangement of three equally important and similar elements that made a successful whole. Without the diagonal belts arranged to pass over the column supports no useful result could have followed. The vice of the old Turner construction was that it employed these bands, direct and diagonal, in substantially the same manner and, of course, with the same result. The new construction accomplishes the same result. The manner of doing so is to employ direct belts as before. These belts are the only ones resting upon the column supports and, therefore, must primarily sustain the entire floor weight and strain. Upon these belts defendant has laid a mat consisting of rods laid obliquely, lineally and laterally, no part of which rests directly upon the column supports. The entire floor area is thus reinforced. It seems to us that this method differs substantially from the old infringing Turner structure. In accomplishing the same result it has eliminated an element necessary to the old way and substituted others which, considering the problem involved, are substantially different. The vital feature of this difference is that none of the oblique rods should rest upon the column supports. If that should occur, we should consider the essential difference obliterated. The difference is between a floor carried by direct belts of rods over column supports and a floor carried by direct and diagonal belts of rods over column supports.

Therefore, we find no infringement in the Nevins and New Spiral constructions. As the third period covers no claim of infringement except through these new constructions, we think there should be no recovery for this period.

### . Second Period.

This period extends from August 23, 1911, to August 1, 1915. The contentions as to this period relate to the scope of the accounting and to the inclusion or exclusion of certain items of credit or expense. The master recommended profits of $73,867.15 or an alternative damage (royalties) of $76,694.47. The court allowed profits of $6,983.81. Both parties excepted to this result. The complainant discussed the challenged errors under the heads following:

(1) The court charged directly against infringing business items of expense that the master held should be shared by infringing and noninfringing business.

(2) Adopted an erroneous basis for apportioning general expense items between infringing and noninfringing business.

(3) Allowed expense deductions not proven.

(4) Allowed deduction of "jobbers' profits" on steel.

(5) Compelled accounting for only 42.58 per cent. of net profits from infringing structures.

Defendant contends that the court erred in adopting the action of the master in the respects following:

(1) No allowance for or apportionment of profits alleged due to "improvements."

(2) No allowance of $12,000 per annum salary to Turner as expense item.

(3) No allowance as direct exclusive expense against infringing business of certain expenditures in connection with experimental slabs and promotion formulae.

(4) No allowance for sale of steel and plans in mushroom column heads.

(5) No allowance for steel and plans for portions of buildings other than floors.

(6) Some miscellaneous items.

[13] Before discussing these separate points it is helpful to fix certain general principles and facts which will be applied. The business of Turner was made up of such as used the infringing construction and such as did not. Both the master and the court, in making apportionment between these two characters of business, set off against each, such expenses and profits as could, with reasonable certainty, be determined to belong to infringing business solely or to noninfringing business solely. Such as were so intermingled as to be insusceptible of definite separation were apportioned on a percentage basis. The basis of the percentage was the comparative ratios of the gross infringing and of the gross noninfringing business to the entire gross business. The above methods were correct and are approved. The evidence establishes that this percentage ratio was that the infringing business was 50.83 per cent. of the entire business. That percentage

will be accepted and used wherever such character of apportionment is necessary.

We now turn to consideration of the above enumerated points and matters covered by the cross-appeals.

1. The items intended in this point are: (a) Commission charges of one P. Wiseman in connection with the Danville branch office—the master treated this as a general expense, the court as a direct expense of the infringing business; (b) advertising expense ($26,001.82) which the master treated as a general expense and which the court allowed directly against the infringing business; (c) allowance by court as expense against infringing business (within the United States) of 20 per cent. of expense of Vancouver, Canada, office.

[14] (a) The Wiseman commission charge. Turner had his main office at Minneapolis, with several branch offices located in the United States and Canada. One of those, in the United States, was at Danville. That branch was in charge of Plummer Wiseman, who was compensated through commissions on the business done by that branch. The percentage of infringing business at the Danville branch was 95.-33 per cent. This percentage is not attacked by either party. The controversy over the Wiseman item (commissions amounting to $3,376.82) arises over the standard of percentage apportionment used. The master apportioned it, to infringing business, upon the general basis of 50.83 per cent. while the court adopted the Danville branch house business percentage of 95.33 per cent. We doubt whether complainant is in a position to contest this action of the court as the court offered to include this item in other matters re-referred to the master and such was apparently not the desire of complainant as it omitted this item from a motion made by it to re-refer certain specified matters. Be this as it may, we are clear that this item was a purely branch office expense and that the court correctly apportioned it upon the percentage basis (95.33 per cent.) applicable to Danville branch business.

[15] (b) Advertising. During this period, Turner spent $26,001.82 in advertising within the United States. The master treated this item as a general expense and apportioned 50.83 per cent. thereof to infringing business. The court thought that the advertising was so nearly entirely of the infringing construction that there should be no division and the entire sum should be charged as an expense of the infringing business. We have examined the evidence, including examples of the advertising matter, and think it shows that the advertising dealt principally with the infringing construction but that noninfringing construction was sometimes included therein, though with much less space and emphasis. The advertisements show that Turner was "featuring" the mushroom (infringing) construction. It is certain that this advertising was designed to, and probably did, help both the infringing and the noninfringing business. Therefore, it would be inequitable for either to bear the entire expense. Also, considering the comparatively much greater space, prominence and emphasis given, in the advertising, to the infringing construction, it would seem that construction should bear a greater percentage of the expense than 50.83 per cent. applied to other general expenses. It is, of course, im-

possible, because of the nature of this item, to say definitely what this percentage should be. However, having in mind the above considerations, we have determined that 80 per cent. would be much fairer than 50.83 per cent. and would probably come as near a just division of this item as can be made. We, therefore, reject the findings of both court and master and settle that 80 per cent. ($20,801.45) should be apportioned, as an expense item, against the infringing business.

[16] (c) The Vancouver expenses. Turner transacted considerable business in Canada. That business comes into this accounting in two respects: First, certain services rendered in the Canadian business (such as drafting, planning, etc.) were performed at the home office (Minneapolis) by the same force of men engaged and from common stocks of such material as were used also in performing services in connection with infringing construction within the United States; second, the Vancouver branch attended to business in the extreme Northwestern States as well as to Canadian business. The item now being considered relates to the expenses of the Vancouver office. Turner claimed that one-third of this expense was directly apportionable to infringing business in the United States. In his original report, the master made no such apportionment but treated the entire Vancouver office expenses as part of the total Canadian expenses. These Canadian expenses, as a whole, were then divided into exclusively Canadian and common business and the latter was apportioned to the United States business upon a determined percentage and this last amount divided, using the general percentage (50.83 per cent.), between infringeing and noninfringing business. When the exceptions to the report were presented, the court ordered a re-reference as to several matters, including this item. The report on the re-reference found "not to exceed 20 per cent." of the Vancouver office expenses directly apportionable to the United States business. Turner makes no complaint as to this finding. Complainant contends that there should have been no re-reference of this item because the master had made findings thereon in his original report and exceptions had been filed by Turner thereto. We think the court had the right to re-refer this matter and that there is no sufficient reason shown why the finding in the second report, which finding was approved, should be disturbed.

[17] 2. This point is that the court adopted a different, and erroneous, basis for apportioning general expense items between infringing and noninfringing business. The basis used by the master was the relative volume, in money, of each character of business and reached the result that 50.83 per cent. of the general expenses should be apportioned to the infringing business. The court adopted a basis of relative, so called, "areas," or flooring footage, using a "constructive area" where there was no real area (as in sales of steel). So based, the court's percentage was 72.89 per cent. to be charged against infringing business. The basis used by the master was a safe, fair and usual one. Tremaine v. Hitchcock, 23 Wall. 518, 23 L. Ed. 97. The argument in favor of the "areas" basis is ingenious but not convincing. We sustain the basis used by the master. There is no question as to the correctness of the percentage he reached if this basis is correct, as

we hold it to be. The percentage of apportionment of general expenses between infringing and noninfringing business is, therefore, found to be 50.83 per cent. against infringing business.

[18] 3. This point has to do with the allowance, as an expense of the infringing business, of $19,729.68 for the time from August 23, 1911, to January 1, 1912. The division of the entire accounting into three periods was based upon the character of legal questions involved; this second period being the one during which liability for infringement was found to exist and where the problems were purely accounting in nature. This period covered the time between August 23, 1911, and August 1, 1915. In considering this period, the master found that the account books of Turner did not begin until January 1, 1912. He used these books as the basis of his findings for that portion of the period between January 1, 1912, and August 1, 1915. Having done this, he added thereto, in his first report, $8,043.37, which was the amount of profit on infringing business he estimated for that part of the period from August 23, 1911, to January 1, 1912. This last sum was not based upon definite evidence as to that part of the period. To secure it, the master had to "rely upon the general evidence before him and from which he can work out a just and fair rule of division" (master's first report). Included in the re-reference were the matters of expense of making sales of infringing construction during that period and the net profit on infringing business during that period. In the second report the master found, in response to these directions, that there was no direct testimony upon the matter of expense but that, on the "areas" theory of division of infringing from noninfringing business, he estimated there was an expense of $13,285.24. The court, using the same theory of division as a basis for estimation determined this sum to be $19,729.28. We have determined above that the proper theory of division to be applied in this case is that of amount of business in money. The theory of division used by the court, and by the master on re-reference, was improper. Aside from this theory, there is no evidence in the record upon which this item should rest. It is, therefore, excluded. This is sufficient; however, it may be said, in addition, that if this expense was reflected in profits during the immediately following portion of the period (January 1, 1912, to August 1, 1915), covered by the books of Turner, it would be more than counterbalanced by a similar situation, during that time, as to expenses, which would carry over beyond August 1, 1915, in their produced profits. This is so because Turner's business was heavier during this last portion of this period and immediately thereafter than during the first portion and immediately thereafter. Also, as to the net profits on infringing business during this first portion of the period there is no dispute. On the re-reference, the master found such profits to be $1,034.36 "upon the request of the parties hereto."

[19] 4. This item is one of $28,478.18 not allowed by the master, but allowed by the court in deduction of the profits upon infringing business. It covers the difference (rise) in price of steel, going into infringing structures, between the time it was purchased and the time it

was used by Turner in such structures. We think the court was in error in this allowance. The broad, basic theory of turning over to the patent owner the profits from the infringement, is that the infringer shall be permitted to retain no financial benefit from his illegal act. This general doctrine has been repeatedly announced by the Supreme Court. We think this doctrine has been applied by the Supreme Court to a situation similar to that here presented in the case of Providence Rubber Co. v. Goodyear, 9 Wall. 788, 19 L. Ed. 566. That case rules this question.

[20] 5. This point involves the right of the plaintiff to recover for profits made by defendant through sale of plans and steel including the columns, column heads, column footings and parts of the supports outside the floor slabs. The master, upon re-reference of that, with other specific matters, found that 42.58 per cent. of the steel sold by defendant went into the areas of the floor slabs and 57.42 per cent. into the floor supports. Thereupon the court permitted recovery for only 42.58 per cent. of the net profits from the plans and steel used in connection with infringing structures. Plaintiff challenges this ruling and claims recovery for all of the profit from the entire structure (floors and supports) furnished by defendant. It urges several grounds for this view only one of which is necessary to be examined. That one is that the Norcross patent gave the entire sales value to the floors and supports which defendant sold. Defendant did not erect entire buildings, but furnished plans and steel for the floors and floor supports. It seems clear that the feature which distinguished these floors was the fact that they were girderless. It was this form (mushroom) of flat slab construction which Turner "featured" and emphasized in his advertising. Apparently, it was that consideration, or feature, which gained him the contracts. He claimed, in his business campaign, a marked superiority for this construction. That was the consideration which sold the floors. The sale of the plans and steel for floors necessarily carried with it the floor supports, in fact, the column heads were made for this particular floor construction. No profit would have resulted from plans or steel for floor supports except as necessary adjunct to the floors; neither the floor nor the support construction would have been secured by defendant except for the girderless character of the floors; that character as there used belonged to plaintiff through the patent. Therefore the profit on the plans and steel for supports flowed directly from that patented construction and could not have existed otherwise.

To permit the defendant to retain such profit would be giving him more than one-half the fruit of his infringement. We think the circumstances of this case, are in this respect, within the Nicholson Paving Case (Elizabeth v. Pavement Co., 97 U. S. 126, 24 L. Ed. 1000). Here there was "an entire profit derived from the construction * * * as an entirety" (Elizabeth v. Pavement Co., 97 U. S. at page 142 [24 L. Ed. 1000]). Where the infringing portion of the sales unit sells the article, the entire profit is recoverable. Dowagiac Mfg. Co. v. Minn. Moline Plow Co., 235 U. S. 641, 646, 35 Sup. Ct. 221, 59 L. Ed. 398; Westinghouse Co. v. Wagner Mfg. Co., 225 U. S. 604, 614, 32 Sup.

Ct. 691, 56 L. Ed. 1222, 41 L. R. A. (N. S.) 653; Crosby v. Valve Co., 141 U. S. 441, 452, 12 Sup. Ct. 49, 35 L. Ed. 809; Hurlbut v. Schillinger, 130 U. S. 456, 471, 9 Sup. Ct. 584, 32 L. Ed. 1011. Therefore, we regard the court's ruling as error and find this entire profit should go to the plaintiff.

Defendant's contentions will be taken up in order as set forth above:

[21-23] 1. Defendant claims that all or part of the profits arose from the improvements made by him. The improvements intended are the widening of the belts to cover all parts of the floor and the raising of extended areas of said belts above and about the column heads into the upper parts of the slab to produce the so-called circumferential cantilevers. In the hearing on the interlocutory decree defendant urged these very features as distinguishing the old Turner construction from the patented construction. This court then held to the contrary. It is true that the court should not settle in advance, by the interlocutory decree, matters which are connected *purely* with the accounting and are not directly involved in the points then before the court. But these features formed the backbone of the defense to the charge of infringement. The court was compelled to pass upon their relation to the patent. A succinct statement of the scope of the patent, which is covered by the claims, is posts surmounted by floor plates upon which are laid belts of metallic network extending directly and diagonally from post to post and embedded in concrete. There is no suggestion of limitation as to the width of these belts or the size of the floor plates. The court held that belts of steel rods, disposed as above and broad enough to practically cover the inter-columnar area, were the mechanical equivalents of the Norcross construction. We cannot, in the accounting, revise this determination nor whittle down its practical effectiveness by declaring an excess in width of the rod belts, if there is such, as an "improvement," without the patent, for which no recovery can be had. The use of the cantilever column heads is claimed to have two results: To make the broad bands possible and to raise the rods immediately around the columns to the top of the floor slab. As to the first result it must be rejected as an "improvement" since, as to that function, it was merely an essential element to make the mechanical equivalent effective. As to the second result we are not impressed with the view that either the evidence or deductions therefrom reveal that it is an advantage to have the reinforcing so disposed. If it is such an advantage, then it is impossible to separate that element from the remainder of the construction so as to allow apportionment therefor in this accounting. This claim of improvement as to the circumferential cantilever column head should be denied. It may be further noted that the offer of defendant was not to show what portions of a combined profit were due to these column heads but was to prove that all, or substantially all, of the profit was due to them. This was on the theory that the Norcross construction was commercially impractical without these so-called improvements. In short the issue would have been the virtual utility of the Norcross construction. The master and the court were right in refusing testimony on this point.

[24] 2. This item relates to a claim by Turner for a salary allow-

ance as an expense item. The claim was for $1,000 a month, amounting during this period to something over $47,000. This claim was denied both by the master and the court. Turner's account books showed this salary item only during the year 1913 and for but $6,000 during that year. The claim, as made, seems clearly an afterthought. Except for the $6,000 it was never charged nor paid; and, as to that amount, it would plainly constitute a profit to Turner from the infringement. Seabury v. Am Ende, 152 U. S. 561, 570, 14 Sup. Ct. 683, 38 L. Ed. 553; Rubber Co. v. Goodyear, 9 Wall. 788, 803, 19 L. Ed. 566. The action of the court and master in this item is approved.

3. This item covers certain promotion expense in connection with tests of these floor slabs and in devising figures and theories to convince building inspectors of the safety and feasibility of such construction. The total item was $12,577.51, of which, Turner contends that $10,721.32 should be apportioned directly against the infringing business in the United States. Both the master and the court denied this allowance. The basis of this ruling by the court was that much of this expense was "incurred really in connection with this lawsuit." We can find no reason in the argument or in the evidence to disturb this conclusion.

4. This item comprehends Turner's complaint that he should not account for profits derived from sales of steel and plans for the mushroom column heads. This has been determined adversely in treating above the fifth item of complainant's argument and the first item of Turner's argument.

5. This item is Turner's contention that he should not be required to account for any profits from steel or plans except such as covered the floor slab alone. The master denied this contention and was overruled by the court. For the reasons given in discussing complainant's item 5 and Turner's item 1 above we think the master was right.

[25] 6. The matters included in this item are many. They have, however, all been determined in some one of the above items, either of complainant or of Turner, and need not here be rediscussed with one exception. That exception relates to remarks made in complainant's brief concerning the attitude of the trial judge. It is, of course, proper, in a respectful and dignified manner, to call the attention of the appellate court to the attitude of the trial judge during the hearing *as shown by the record itself.* It is unnecessary and somewhat irritating to have this claimed antagonistic attitude continually reiterated and stated to be the sole reason for rulings by the trial court. We have endeavored to determine the issues, here presented, upon the record in the case and upon the briefs and arguments of counsel, and have not been influenced by these statements as to the claimed animosity of the trial judge.

The master made an alternative finding of damages for this period. Defendant excepted to this finding on the ground that the evidence failed to show that, prior to or during any of this period, plaintiff had ever sold any plans or rights under the Norcross patent or collected, charged or attempted to collect or charge any royalties thereunder, or had ever employed the Norcross structure in erection of any buildings.

The court sustained this exception. We have carefully examined the record and think the court right in this conclusion. There was evidence of royalties charged at later dates but such evidence was not sufficient, under the circumstances here appearing, to be used as a basis for damages during this earlier period in the introduction and development of a new untried method of construction.

Summarized, the above determination as to this second period results in a modification of the figures of the master's report *as to profits* for this period as follows: (1) Increase the direct expense apportioned against the United States infringing business by a total of $11,489.24, composed of Wiseman $1,502.67, advertisements $7,584.73, and Vancouver branch $2,401.84; (2) substitute $1,034.36 for $8,043.37 as net profits on infringing business between August 23, 1911, and January 1, 1912.

[26] Aside from the main questions in the case, there are several requiring disposition. One of them relates to recovery of costs and some of the particular items thereof. The final decree of the trial court, as to costs, was (1) that plaintiff recover its costs in connection with the hearing on the interlocutory decree (adjudging infringement) including the costs in the Court of Appeals; (2) that the master's fees be equally divided; (3) that each party bear the reporter expenses for taking its or his testimony; (4) that plaintiff pay the entire expense of a chartered accountant employed by the master to go over Turner's books; (5) that plaintiff recover, as costs, $5 for each exception to the master's report which was overruled by the court and the defendant $5 for each such sustained. We approve this disposition of the costs, with the exception of the expense of the chartered accountant. The record convinces that the employment of the accountant was necessitated by the evident inaccuracy of defendant's returns concerning his business. Since he occasioned and could have avoided this expense, he should bear it. This item is assessed against the defendant.

Another matter is a motion by plaintiff to strike out those portions of defendant's brief which illustrate and discuss the alleged prior art. As we have determined, for other reasons, that the prior art is not open for consideration in this accounting, it is unnecessary to rule this motion.

A motion to dismiss Turner's appeal, in so far as it relates to the contempt proceeding, has been presented. When a writ of error was brought to this court from the judgment that Turner was in contempt of the injunction issued in this case, this court held that contempt proceeding to be purely remedial in character and dismissed the writ. Turner v. U. S., 238 Fed. 194, 151 C. C. A. 270. The grounds for the present motion are:

"(1) The only damage to plaintiff by this order consisted in the requirement that he pay two hundred ($200) dollars to the United States, and it does not appear in the record whether said sum has or has not been paid, although we understand it to be conceded by counsel that it has been paid into the treasury of the United States.

"(2) Assuming this to be true, defendant cannot recover the fine by any order that might be made by this court in this proceeding.

"(3) As the fine was made payable to the United States at the request, or at least the suggestion, of the defendant, and over the objection of plaintiff,

defendant could not at any time appeal from his own order, or from an order made at his own suggestion or request, and supposedly for his own benefit.

"(4) This is an appeal from the final decree of the trial court. If defendant desired to have the interlocutory contempt proceedings reviewed by this court he should have taken proper steps in the lower court to have the matter covered by an appropriate provision in the final decree so that an appeal covering the same could have been taken to this court and appropriate assignments of error made to such decree. Not having done this, there is nothing in the final decree covering this matter from which an appeal can be taken.

"(5) The trial court in entering its final decree sustained defendant's exceptions to the finding of the master that the defendant's said new construction is an infringement of the Norcross patent in suit. The decree to this extent is in defendant's favor and an appeal therefrom has been taken by plaintiff. Defendant cannot appeal from any part of the final decree that is favorable to him or sustains his own contentions.

"(6) Under section 129 of the United States Judicial Code appeals may be taken in certain cases from interlocutory orders, but such appeals must be taken within thirty (30) days. We know of no provision in the federal statutes under which an appeal can be taken from an interlocutory order more than two years after such order is entered."

[27] As to point 1 it may be said that there was something involved in the order of much more financial importance to Turner than the small fine involved. It was the determination by the court that the Nevins construction constituted an infringement of the Norcross patent. That matter was unaffected by the payment, even if voluntary, of the assessed fine.

[28] As to the second point it is evident that the fine was voluntarily paid by Turner. We cannot and do not attempt, in this proceeding, to which the United States is not a party, to consider the matter of the return of this sum by the United States. Turner is asking no such relief. He is attacking that part of the contempt order which adjudged the infringement.

As to the third point the circumstance that Turner may have invited or sought that part of the contempt order making the fine payable to the United States instead of to complainant cannot affect his steadfast contention that the Nevins construction was not an infringement.

[29] Points 4, 5, and 6 are, we think, covered by the consideration that a remedial contempt proceeding is a part of the main case and an order made therein is interlocutory in character and reviewable only upon the appeal from the final judgment in the main case. Doyle v. London Guarantee Co., 204 U. S. 599, 27 Sup. Ct. 313, 51 L. Ed. 641; Matter of Christensen Engineering Co., 194 U. S. 458, 24 Sup. Ct. 729, 48 L. Ed. 1072.

As we have determined that the Nevins construction was not an infringement the order in the contempt proceeding should be and is reversed with instructions to dismiss the same.

## Summary.

The above disposition of the matters involved in these appeals is as follows:

(1) Reversal and dismissal of the contempt proceeding.

(2) No recovery for the first period of the accounting.

(3) No recovery for the third period of the accounting.

(4) No recovery of damages for the second period of the accounting.

(5) Recovery of profits for the second period of the accounting as shown by the master's first report, with the changes summarized in connection with the discussion of this period.

(6) Recovery of costs, in the trial court, as determined by that court except that expense of chartered accountant .is assessed against defendant.

Costs, of these appeals, to be divided equally between the parties. The case is remanded for proceedings in accordance herewith.

Judge HOOK joined in the above determination of these cases and in each of the points involved therein. He was to write the opinion and had prepared a rough, incomplete draft thereof at the time of his death. Some of that draft is incorporated verbatim in this opinion and the views expressed above represent those of all three judges, except upon one point. Judge HOOK thought the steel in the columns should be excluded from the accounting. Judge WADE and myself thought otherwise. We based our conclusion upon the considerations, on this point, above outlined and upon the additional reason that while columns could be used for other purposes these particular columns could not be so used. The steel rods in these columns were extended up through the columns to the tops, where they were bent over so as to form extensions into the floor slab at the column head. Such columns could not be used for any other purpose, were intended for this sole purpose and formed part of a unitary structure which included the infringing floor slabs as the most important structural and commercial element.